## S. M. SMITH v. STATE.

No. A-2376.   Opinion Filed March 15, 1916.

(155 Pac. 699.)

1. HOMICIDE—Manslaughter—Sufficiency of Evidence. In a prosecution for murder the evidence examined and **held** to be sufficient to support a verdict convicting the defendant of manslaughter in the first degree.

2. DEFENSE—Insanity. The true test of criminal responsibility, where the defense of insanity is interposed, is, whether the defendant had sufficient reason to know right from wrong.

3. HOMICIDE — Defense — Insanity — Reasonable Doubt. Section 5902 of Procedure Criminal provides: ''Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'' **Held**, that where the defense sought to be established is insanity, the legal presumption of sanity must be overcome by evidence which is sufficient to raise a reasonable doubt of the defendant's sanity at the time of the commission of the homicide. When that is done, the presumption of sanity ceases, and the burden of establishing the sanity of the defendant is upon the state, which is then required to prove his sanity as an element necessary to constitute the crime, and if, upon consideration of all the evidence, together with all the legal presumptions applicable to the case, the jury have a reasonable doubt as to whether the defendant was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing, he should be acquitted.

*Appeal from District Court, Muskogee County;*
*Fred P. Branson, Judge.*

S. M. Smith was convicted of manslaughter in the first degree and appeals.   Affirmed.

*M. L. Williams* and *B. C. Trice,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error, S. M. Smith was by information charged with the murder of one Mrs. Bessie Brown,

by shooting her with a pistol. Upon his trial he was found guilty of manslaughter in the first degree and his punishment assessed at 30 years' imprisonment in the penitentiary. From the judgment rendered upon the verdict he appeals.

From the evidence given on the trial it appears that on the 12th day of January, 1914, about the middle of the afternoon, the defendant Smith purchased a loaded revolver of a pawn broker in the city of Muskogee, thus armed he went to the fire station on South Second street.

Shortly after, Mrs. Bessie Brown with a lady friend was walking down South Second street to the Midland Valley station, where Mrs. Brown intended to take the 5 :25 P. M. train. As they approached the fire station the defendant with a pistol in his hand walked up behind Mrs. Brown, she dropped the suit case she was carrying and started to run across the street, the defendant fired the first shot and pursued, when five or six feet from her he fired the second shot which took effect in her hip, she shrieked, and turned down the street, overtaking her he pushed the pistol against her and fired, screaming, she ran on and he shot her again, overtaking her he snapped the pistol twice, and then began to strike her over the head with it.

At that time a policeman appeared and arrested the defendant. He stated to those present "I hope I have killed her; she ruined my home." His victim was taken to the Baptist hospital where four days later she died. It appears that the defendant a married man lived with his family for several years in Muskogee where he conducted a bakery, the deceased a woman of the town was the proprietor of a rooming house, near his place of business, and she became his mistress. About two years before the tragedy the deceased went to Texas and the defendant abandoned his family and followed her. After staying in Texas about a year they separated, and the defendant returned to his family. It also appears that about two weeks before the shooting he registered as a guest at the Elro hotel in Muskogee, under an assumed name and inquired for the deceased who was a guest at the hotel. Shortly after going to his room he assaulted the deceased and was

choking her when several persons hearing her scream rushed in and prevented further assault. He then stated to those present "that woman robbed me out of four hundred dollars down in Texas." There was also testimony tending to show that the defendant had threatened at various times to kill Mrs. Brown, and that he had said that "unless she paid him four hundred dollars she owed him, he was going to kill her." The only defense attempted or suggested in behalf of the defendant, was insanity or such weakness or derangement of mind as to render him irresponsible in law, for the commission of the homicide.

The testimony of the defendant as a witness in his own behalf was substantially as follows:

"Q. Did you kill her? A. I did.

"Q. Will you tell the jury why you did? A. I killed her because it seemed that God told me to kill her, and I couldn't help it.

"Q. Did you believe you were doing anything wrong to kill her? A. I thought I was doing right to kill her.

"Q. You heard your wife testify about your attempting to commit suicide? A. Yes, sir.

"Q. How came you to do that? A. I just got tired and wanted to get away, couldn't stay away from her here, she would not let me stay away from her. She threatened my wife and my wife's life.

"Q. And you believed you were doing right to kill her? A. Yes, sir."

Upon his cross examination the defendant was asked questions and gave answers as follows:

"Q. And you think you would have done the wrong thing not to have killed her? A. Yes, sir.

"Q. Then you understand the difference between right and wrong? A. No, sir, not on that, I thought I ought to have killed her, I think so yet.

"Q. Well, now are you insane? A. No, sir.

"Q. Was God telling you to choke that woman in the Elro Hotel? A. Told me to kill her, not choke her. He seemed to tell me to kill her. Something said to kill all the time.

"Q. God told you to make her give you $400.00? A. No, sir, didn't mention anything about $400.00.

"By a Juror:

"Q. Are you conscious now of all that is transpiring today in this trial? A. Yes, sir.

"Q. All that happens? A. Yes, sir.

"Q. And have known all the time? A. Yes, sir."

One or two witnesses testified as to acts, conduct and declarations, of the defendant tending to show that he was at times irrational.

The defendant's wife as a witness in his behalf testified that just before he went to Texas he was severely ill, and she thought he had taken laudanum; that she did not call a physician but treated him herself, and that he also tried to kill himself with a pistol that he took from a drawer of the dresser in her room; that she took the pistol from him and threw it away. That from her observation of him she would say that he was insane when he shot the deceased.

A physician testified that it was his opinion that the defendant was temporarily insane at the time he fired the fatal shots.

In rebuttal the pawn broker who sold him the pistol testified that when the purchase was made the defendant talked as any ordinary man would. Another witness testified to having had a conversation with him as he was leaving the pawn shop and that he seemed rational. Two physicians testified and gave as their opinion, based upon their examination of the defendant shortly after the shooting; that he was sane and gave the same answer to proper hypothetical questions.

No brief has been filed on behalf of the plaintiff in error, and we have not been favored with an oral argument in his behalf.

"When no counsel appears, and no briefs are filed, the court will examine the pleadings, the instructions of the court and the exceptions taken thereto, and the judgment and sentence and if no prejudicial error appears will affirm the judgment. 4. Court rules."

We have carefully examined the evidence and the proceedings upon this trial with the care and deliberation due to the gravity of the inquiry, and we are satisfied that the plaintiff in error had a fair trial in which all his rights were protected.

The only defense sought to be established upon the trial was the insanity of the defendant at the time of the commission of the homicide, and the only question for the jury on the evidence was, whether the homicide was excusable on the ground of insanity, as was claimed by the defendant, or murder or manslaughter in the first degree. The defense interposed by the defendant and the law applicable thereto was fully and fairly submitted to the jury in the charge of the court which was in part as follows:

"No. 7. Gentlemen of the jury, you are instructed that the defendant has interposed as his defense in this case the plea of insanity. When that defense is interposed, the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the minds of the jury by competent evidence beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if he only introduces sufficient evidence to raise in your minds a reasonable doubt of his sanity, and when this is done, you are instructed that the burden of proof is upon the state to prove the sanity of the defendant by competent evidence, beyond a reasonable doubt, before you would be justified in convicting the defendant as charged in the information, and then the burden of proving the sanity of the defendant rests upon the state, like that of proving any other material allegation of the information; and, if you believe that the state has failed to prove by competent evidence, beyond a reasonable doubt, the sanity of the defendant, and if, upon a consideration of all the evidence, together with all the legal presumptions applicable to the case, the jury have a reasonable doubt as to whether the defendant was mentally competent to distinguish between right and wrong or to under-

stand the nature of the act he was committing, he should be acquitted, otherwise he should be convicted. Given. Excepted to by the defendant. B. C. Trice, Atty. for Defendant. Exception allowed. Fred P. Branson, Judge."

Under the decisions of this court this instruction was as favorable as the defendant had any right to demand.

*Alberty* v. *The State,* 10th Okla. Cr. 616, 140 Pac. 1025, 52 L. R. A. (N. S.) 248;

*Adair* v. *State,* 6th Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119.

It is our conclusion after a careful consideration of all the testimony in regard to the mental condition of the defendant at the time of the homicide that the killing was the wilful, deliberate and premeditated act of a person who understood perfectly well the nature and consequences of his act. Evidently the life of this woman was sacrificed to the spirit of jealousy and revenge which animated an immoral and depraved creature, and those evil passions must be deemed the motives influencing the defendant in the commission of the homicide. From our examination of the record we are satisfied that no exception taken by the defendant upon the trial is of any force, and our conclusion is the law can only be vindicated by an affirmance of the conviction and judgment. The judgment rendered upon the verdict is therefore affirmed.

FURMAN and ARMSTRONG, JJ., concur.