## GEORGE SNODGRASS v. STATE.

No. 2353.    Opinion Filed October 9, 1918.

(175 Pac. 129.)

1.    **TRIAL—Instructions—Insanity.** An instruction upon the issue of insanity, when that issue is properly raised, should be given in compliance with the rule laid down in **Adair v. State,** 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119.

2.    **SAME—Insanity—Instructions—Burden of Proof.** An instruction given in the following language: "You are instructed that the defendant has interposed as one of his defenses in this case the plea of insanity. When that defense is interposed the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity at the time of the alleged offense; and if from all the evidence in the case there is a reasonable doubt in your minds as to the sanity of the defendant at the time it is charged that he committed the offense, you will return a verdict of not guilty"—is unfair to the accused, in that it fails to say that if he meets the burden of introducing sufficient proof to raise a reasonable doubt as to his

sanity, the law imposes on the state the burden of establishing the sanity of the accused, the same as any other material fact, to warrant a conviction. The law requires the state in this class of cases, if sufficient proof has been introduced to raise a reasonable doubt as to the insanity of the accused, to meet that issue by introducing sufficient competent proof to establish the sanity of the accused beyond a reasonable doubt.

3. **APPEAL AND ERROR—Instructions—Harmless Error.** When a person is tried upon a criminal charge, interposes a plea of insanity as a defense, and fails to introduce competent proof sufficient to establish the issue or raise a reasonable doubt thereof, the giving of an instruction which would have been prejudicial if the issue had been properly raised becomes harmless.

*Appeal from District Court, Le Flore County;*
*W. H. Brown, Judge.*

George Snodgrass was convicted of murder, and appeals. Affirmed.

*S. A. Neely* and *Lunsford & Bulgin,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, George Snodgrass, was convicted in the district court of Le Flore county at the April, 1914, term on a charge of murder, and his punishment fixed at imprisonment in the state penitentiary for life.

The information charges that the plaintiff in error murdered H. L. McCabe on January 20, 1914, in Le Flore county. The proof discloses that the homicide occurred in the town of Spiro on the morning of January 20, 1914; that McCabe was a middle-aged blacksmith, living in said town, and Snodgrass a barber, about 70 years of age; that the parties lived on adjoining lots; that there had been ill feeling existing between them for some months; that the deceased had been annoying the Snodgrass family in an

effort to force them to sell their property to him at a sacrifice and move away. Snodgrass had made frequent complaints to his friends and neighbors about the imposition of McCabe upon him and his family. A number of these neighbors testified as witnesses at the trial to the effect that on this subject of imposition and abuse offered toward his family and the indignities heaped upon them they believed that the plaintiff in error was insane. On the morning of the homicide, Mrs. Snodgrass, who, according to the testimony of the case, had tried to keep down trouble between the deceased and the plaintiff in error, told her husband, the plaintiff in error, about a number of indignities McCabe had perpetrated against her a short time prior thereto, and urged him to sell their property and move away from the neighborhood. Among other things, she told him of numerous occasions upon which the deceased had used vile and abusive language toward her, and on the day before had exposed his sexual organs before her and asked if she did not want them used upon her. Upon the conclusion of the story told by Mrs. Snodgrass, the plaintiff in error, without eating his breakfast, went immediately down town to his barber shop. Shortly after his arrival there McCabe passed by, made some demonstration of hostilities, and called the plaintiff in error a damned old son of a bitch.

The plaintiff in error reached inside the barber shop and secured a shotgun and shot McCabe. He fell to the ground, and after he had fallen the plaintiff in error walked up to him and shot him again, walked around the body a time or two, and struck the head of the deceased with the gun barrel repeatedly. On the day before the homicide the gun used in perpetrating the killing was repaired by a local gunsmith and carried to the barber shop by

the plaintiff in error and there left by him. The state contended at the trial that the gun was repaired at the instance of the plaintiff in error and placed in his barber shop to be used for the purpose of killing McCabe. The plaintiff in error contended that this was not the case, but that he had the gun repaired to shoot some rabbits on a little place he owned near town, and he had left the gun at the barber shop so it would be convenient to use in hunting the rabbits.

The defense interposed was that of insanity. A large number of witnesses were introduced who testified that they believed the plaintiff in error was insane. The testimony offered on behalf of the state tended to establish the fact that the plaintiff in error was not insane, and that the homicide was perpetrated by him with the premeditated design to effect the death of the deceased.

The jury found the plaintiff in error guilty as charged, and fixed his punishment at life imprisonment in the state penitentiary. This court will not undertake to discuss the verdict of the jury, although a different conclusion could have been reached, and would have been warranted, unless there is error of law. The record, therefore, has been carefully examined, with the view of determining whether or not there is prejudicial error of law disclosed.

(1) From this examination we find but one proposition for discussion—that is based upon the contention that the court erred in refusing to instruct the jury that under the law the burden was on the defendant to introduce only sufficient evidence upon the proposition of insanity to raise a reasonable doubt in the minds of the jury as to his sanity, and, when this was done, the burden was upon the state to prove beyond a reasonable doubt that the defendant was sane and capable of distinguishing right from

wrong or of understanding the wrongfulness of the act at the time the homicide was committed.

The court instructed the jury, in lieu of the request, as follows:

"You are instructed that the defendant has interposed as one of his defenses in this case the plea of insanity. When that defense is interposed the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity at the time of the alleged offense; and if, from all the evidence in the case, there is a reasonable doubt in your minds as to the sanity of the defendant at the time it is charged that he committed the offense, you will return a verdict of not guilty."

"The test, within the meaning of the law, as to whether a man is sane or insane, (1) the mental capacity to distinguish between right and wrong as applied to the particular act, or (2) knowing the wrongfulness of an act, the defendant is not criminally responsible if by reason of insanity he did not have the will and mental power to refrain from committing such an act."

These are the only instructions given on this issue. Counsel excepted to the first instruction upon the ground that—

"it does not cover fully the law relative to the burden in insanity cases, in that it should state that whenever the defendant introduces sufficient evidence to raise a reasonable doubt as to the defendant's sanity, then it devolves upon the state to show beyond a reasonable doubt that the person charged with a crime is sane."

It is argued that the giving of the instruction complained of, and the refusal to give the requested instruction, was prejudicial error, and that on this ground the judgment of conviction should be reversed.

There is no doubt but that the court should have followed the rule laid down in *Adair v. State*, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119, wherein it is said:

"Sanity being the normal and usual condition of mankind, the law presumes that every person is sane; hence the state in a criminal prosecution may rely upon such presumption without proof relative thereto. But, when the defendant in a homicide case produces sufficient evidence to raise a reasonable doubt of his sanity, the law then imposes on the state the burden of establishing the sanity of the defendant, the same as any other material fact necessary to warrant a conviction; and if, upon consideration of all the evidence in the case, the jury have a reasonable doubt that the defendant at the time of the commission of the act charged was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing, he must be acquitted."

The instruction given should have contained a clause stating the rule in this manner, in order that absolute fairness might prevail, and the accused might have full and impartial consideration at the hands of the jury of all the facts, provided he met the burden by offering competent proof to the extent of raising a reasonable doubt as to his sanity.

(2) The latter instruction given to the jury, however, is more than fair to the plaintiff in error—it gave him the benefit of the irresistible impulse doctrine, which is not a defense under the law of this state. We are therefore of the opinion that, although the instructions did not as fully cover the principle of law involved as they should have covered it, yet, upon the whole, the instructions are more favorable than the plaintiff in error was entitled to receive. This being the case, this court would not be warranted in reversing the judgment.

The experts who testified in this case on behalf of the plaintiff in error, in answer to lengthy hypothetical questions covering the facts disclosed by the record, answered that the defendant was either angry or insane. If medical experts and students of insanity who have had experience in handling patients afflicted with insanity—and these physicians testified that they had had such experience— were not able to say that a person on these facts and for whom they were testifying was insane, it would hardly be reasonable to expect a jury of laymen to so conclude. A number of laymen who were intimately associated with the parties involved in this case, and who were close neighbors to them, testified to many facts which indicated that the plaintiff in error was insane, and other neighbors, who were also closely associated with both the deceased and the plaintiff in error, testified to the contrary.

The writer of this opinion has read this record many times, and has very reluctantly reached the conclusion that this judgment should be affirmed on account of all the disclosures contained therein, but under the doctrine laid down in many cases, that issues of fact are for the jury, and, in the absence of prejudicial error of law, the judgment will not be reversed, has finally concluded that the judgment should be affirmed. This court was not constituted to extend clemency, but to administer the law fairly and impartially, under the Constitution and the statutes of this state. After careful consideration of all the testimony offered by both sides, we conclude that the burden placed on the plaintiff in error to offer testimony sufficient to raise a reasonable doubt as to his sanity was not overcome. The jury was therefore entitled, under all the evidence, to conclude that he was guilty of murder as charged.

The judgment is affirmed.

DOYLE, P. J., and MATSON, J., concur.