# WALLACE BORDEN v. STATE.

No. A-5677.   Opinion Filed Jan. 15, 1927.
(252 Pac. 446.)

McCollum & McCollum, for plaintiff in error.

George F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Wallace Borden, was tried in the district court of Pawnee county upon the charge of having committed the detestable and abominable crime against nature, committed on the person of a boy 13 years of age by penetration per os, and the following verdict returned:

"We, the jury, do upon our oaths find the defendant, Wallace Borden, guilty of sodomy as charged in the information and leave his punishment to be assessed by the court."

Motion for new trial was duly filed and overruled. On February 23, 1925, the court sentenced the defendant to imprisonment in the reformatory at Granite for the term of two years.

The errors assigned present the questions whether the information charges a public offense, whether the court erred in admitting incompetent testimony, and whether the evidence is sufficient to sustain the verdict of the jury.

The questions will be disposed of in the order stated:

Upon arraignment the defendant interposed a demurrer to the information on the grounds that it does not state facts sufficient to constitute the offense attempted to be charged, and that the same is not direct and certain as to the offense attempted to be charged, and that it is uncertain and insufficient, in not alleging the particular circumstances of the offense. The demurrer was overruled.

It is alleged in the information that in Pawnee county, October 29, 1924, the defendant did then and there willfully, unlawfully, and feloniously make an assault upon one Fred Freeman, a male person 13 years of age, and did unlawfully, intentionally, forcibly, and

against the order of nature have a venereal affair with the said Fred Freeman, and did commit the abominable and detestable crime against nature.

It is urged that the information is not direct and certain as to the offense charged, or the particular circumstances of the offense charged as required by the statute (section 2556, C. S. 1921), and that the mere employment of the language of the statute is not sufficient. Section 1867, C. S. 1921, reads as follows:

"Any person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years."

Section 1868 provides:

"Any sexual penetration, however slight, is sufficient to complete the crime against nature."

The statute gives no definition of the crime which the law with due regard to the sentiments of decent humanity has always treated as one not fit to be named. It was never the practice to describe the particular manner or the details of the commission of the act. Even in the time of Blackstone this rule was applied to the common-law crime of sodomy. 4 Bl. Comm. 215.

In the following cases it is held that an indictment or information, charging the commission of the crime against nature, in the language of the statute, is sufficient. Honselman v. People, 168 Ill. 172, 48 N. E. 304; Kelly v. People, 192 Ill. 119, 61 N. E. 425, 85 Am. St. Rep. 323; State v. Whitmarsh, 26 S. D. 426, 128 N. W. 580; Herring v. State, 119 Ga. 709, 46 S. E. 876.

This offense consists in a carnal knowledge, committed against the order of nature, with mankind or with a beast.

In Kelly v. People, supra, the court expressed the

opinion that the accused would be guilty where the penetration was per os, whether he was the pathic or not.

In Ex parte De Ford, 14 Okla. Cr. 133, 168 P. 58, this court said:

"The authorities in those states where the common-law definition of sodomy has not been enlarged upon are directly in conflict. Some are to the effect that the act here charged was not intended to be, nor was it, included within the term 'sodomy' as known to the common law, while the others, and to our mind better reasoned opinions, are to the effect that 'all unnatural carnal copulation whether with man or beast seems to come under the notion of sodomy at common law.' * * * And in such sense it includes copulation between human beings per os as well as per anum."

It follows from what has been said that the demurrer to the information was properly overruled.

In order that the other questions raised may be properly understood, consideration of the evidence will be necessary.

Fred Freeman, the alleged assaulted party, was a little boy 13 years old, and attending school at Hallett. He went to school by going from his home to a point on the public highway, a distance of about 2½ miles, on foot, and from there to and from school, a distance of 3 or 4 miles, in a school bus. A schoolhouse called Stony Point was about midway between his home and the place he met the bus. On the day alleged he left the school bus at the usual place, and on the road home overtook the defendant and a few minutes later the alleged offense was committed. The defendant was a large boy in his 18th year; he was nearly six feet tall and weighed over 200 pounds; he lived with his mother near Cleveland. A day or two before the alleged as-

sault he left his home and proceeded to the town of Maramec for the purpose of paying a note due at the Maramec State Bank, making the trip on foot, except such occasional rides as he caught in cars. After paying his note he started on his return journey, stopping with a Mr. Allen that night, and the next day attended a public sale at the Lewis place. He left the sale in a car driven by Carl Dye, and occupied by two or three other persons; leaving the car something more than a mile south of the Stony Point schoolhouse he started north and arrived at his grandmother's house about 5 o'clock; he was there arrested by a searching party that evening.

The Freeman boy testified: That he overtook the defendant on the road, and after a brief conversation the defendant pulled him into the brush and there by force and threats committed the offense. That the defendant then asked him what he would bring him if he would turn him loose, and he told him he would bring him anything he wanted. The defendant then told him to bring him $5 in the morning, or he would kill him and throw him into the creek; then he told him to go on. That he ran down the road as fast as he could run. After passing the Stony Point schoolhouse Mr. Firestone overtook him in a car and asked him to ride. That he got into the car and asked Mr. Firestone if he had a gun, and Mr. Firestone said, "No; what do you want with a gun?" and he told him there was a fellow down there that beat him and abused him, and Mr. Firestone asked him what he did, and he told him. That he left the car and went to his home and there told his father and his uncle what had happened. About that time Mr. Fletcher drove up in his car, and with his father and uncle he got into the car and Mr. Fletcher drove to the place where he left the defendant.

Two witnesses testified that they left the sale at

the Lewis place in a car with the defendant and that he got out of the car about a mile south of the Stony Point schoolhouse and went north. Walter Hardy testified he saw the defendant at the Lewis sale that day and later saw both the defendant and the complaining witness on the public highway south of the Stony Point schoolhouse; that the Freeman boy was about 150 steps behind the defendant and both were going north.

J. W. Firestone testified that he was leaving the Stony Point schoolhouse, and as he got into his car he saw a boy running towards the schoolhouse; that he drove out on the road and overtook the boy within 100 yards and asked him to ride, and when the boy got in and he was crying and spitting and slobbering, the boy asked him if he had a gun, and he said there was a fellow back there that abused him and mistreated him worse than if he was a dog and that he wanted to go back and kill him, and that "he told me what he had done"; that the boy was with him for two or three minutes.

Dan L. Lancaster, undersheriff, testified that he arrested the defendant that evening and took him through the field to the place near the road where the alleged crime is supposed to have been committed; that defendant admitted that the tracks leading from the road were made by him. That he claimed that he left the road there, going through the fields to his grandmother's.

Fred Freeman, the father of the little boy, testified that when his son reached home he immediately made complaint and told what had happened, saying the assault was committed by a big fellow wearing a brown cap, leather overcoat, and overalls; that he immediately got into Mr. Fletcher's car and they went to the place where the boy said the assault occurred.

The defendant testified, denying that he saw the Freeman boy on the road that afternoon or that he had anything to do with him, claiming he left the road south of the Stony Point schoolhouse and cut across the fields to his grandmother's place. Several witnesses testified that they knew the defendant's reputation in that community as being an honest, industrious, and law abiding boy and that his reputation was good.

It is contended that the court committed prejudicial error in permitting the witness Firestone to testify to the conversation had between himself and the Freeman boy, and in permitting the father of the Freeman boy to testify to the conversation which he had with his son, wherein he described his assailant. The record shows that this evidence was permitted to go to the jury against the defendant's objections on the theory that it was a part of the res gestae.

The declarations to the witness Firestone were made a few minutes after the alleged act was committed, and the declarations to the father were made a few minutes thereafter, and, considering the little boy's age, his appearance and condition when he complained to the witness Firestone and to his father, we are of the opinion that the testimony was properly admitted.

The rule is well settled that in cases of rape, where the injured female makes complaint of the fact that she has been ravished, that fact can be proved by the testimony of the prosecutrix or other witnesses in corroboration of her testimony, but by the weight of authority the evidence must be confined to the bare fact that complaint was made; the details or particulars of the complaint not being admissible as substantive testimony, unless the statements are a part of the res gestae.

Where the complaint is made immediately after the

occurrence, it constitutes a part of the res gestae; and where the party assaulted is of tender years it would seem not only the fact that complaint was made but the particulars of the complaint as made should be admitted. Bouie v. State, 9 Okla. Cr. 345, 131 P. 953.

However, the rule authorizing evidence of the detailed statement as res gestae is not to be confounded with that which permits evidence that complaint was made, but rejects the details and particulars of such complaint. These rules are widely different, and the distinction is plainly observed and noticed in the authorities. When res gestae, it is original, primary testimony and can be introduced as such, and under the other rule it can only be used as sustaining or corroborative evidence.

In Morehead v. State, 12 Okla. Cr. 62, 151 P. 1183, Ann. Cas. 1918C, 416, it is said by this court:

"No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be a part of the res gestae. Each case must necessarily depend on its own circumstances to determine whether the facts offered were really part of the same continuous transaction."

And again the rule is well settled that if such declarations "are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestae."

As a general rule, to constitute declarations a part of the res gestae, it is not necessary that they were precisely coincident with the principal fact. If they sprang out of the principal fact, tend to explain it, were

voluntary and spontaneous, and made at a time so near it as to preclude the idea of design, they may be regarded as contemporaneous and admitted in evidence.

We see no reason to doubt that this conviction was justified by the evidence, and, finding no error prejudicial to the defendant, and it appearing that he had a fair and impartial trial, the judgment appealed from is affirmed.

EDWARDS and DAVENPORT, JJ., concur.