## M. D. ROBERTS v. STATE.

No. A-8819. July 12, 1935.

(47 Pac. [2d] 607.)

Wimbish & Wimbish and King & Crawford, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.  Plaintiff in error, hereinafter referred to as defendant, was convicted in the district court of Pontotoc county upon an information charging him with having committed the crime of sodomy on or about the 29th day of November, 1933, upon the person of Dora McNeil, and in accordance with the verdict of the jury he was sentenced to imprisonment in the penitentiary for the term of ten years.  To reverse the judgment, he appeals.

The record shows that the defendant is a man of 69 years of age and has been blind for the past 12 years; that he has lived in Ada for more than 28 years, and for the past

three years conducted a small store in a building 10 x 16 on 6th street near the Irwin school.

The complaining witness, Dora McNeil, a girl nine years of age, testified that some time in November defendant in the back part of his store, behind the counter, licked her private parts with his tongue; that she does not remember what time of day it was, whether in the morning going to school or coming from school; that at the time another school girl, Lenora Curtis, eight years old, was with her and defendant performed a similar act with the Curtis girl just before he committed the act with her; that he said "he would give us some candy if we would let him lick us"; that each watched the other when the act was committed; that there were no other persons in the store except the defendant and "us" girls; that they went to the store often, and she went to the store nearly every day, and continued to go until the complaint was filed; and that was the only time he ever did that.

Lenora Curtis testified that she was there with Dora and defendant licked her, in the back of the store, while Dora was standing in the store; then Dora went back there with him and she stood by the door and did not see him lick Dora; that an old man whose name was Van Curon was in the front part of the store sitting by the stove.

On cross-examination she stated that she did not tell anybody about it until Miss Bonnie, her teacher, asked her and she told her nothing like that took place; that she did not tell her father until her father threatened to whip her.

Will McNeil, father of Dora, testified over objections of defendant that his daughter told him about it a few days after it happened.

As a witness in his own behalf, defendant testified that he has lived in Ada 28 years, has been employed by the cement plant, ice plant, Frisco Railway, and the Choctaw Cotton Oil Company; that he lost his sight 12 years ago, but had continued to make a living and had never asked for charity; that he had heard the testimony of the two girls; that their statements were absolutely untrue; that his store building was 10 x 16, one room, with a counter crossways and a little gate between the front and rear, with a stove in the front; that he was tried on a similar charge last week; that old man Van Curon, age 89 years, was present and testified; that he had never been convicted of any crime. Over objection he then offered to show that he was never charged with any crime and was never before arrested.

On cross-examination he stated that Lenora Curtis came into the store one day and said: "Mr. Roberts this is my birthday, I am eight years old today," and he just spanked her nine times and gave her some mints for a birthday present; asked:

"Q. Have you ever had your hands on Dora McNeil? A. I may have had my hands on her, I don't remember. I am liable to place my hands on anybody to see how large they are. Q. Did you ever place your hands on her private parts? A. Certainly not. Nothing like that ever happened."

He further stated that these little girls were in the store several times together; that he reared a family here in Ada, three girls and a boy all living in Ada and vicinity; that his wife had been dead six years.

A number of witnesses were called and asked if they knew defendant's general reputation as to being an honest,

upright, law-abiding citizen in the community, or otherwise; each answered "Yes, for more than 25 years"; asked:

"Is that reputation good or bad?  A. Good."

The transcript of the testimony of Dora McNeil given at the preliminary hearing was read to the jury.  The following is an excerpt:

"Q. You all go down there nearly every day?  A. Yes, sir.  Q. You get candy there?  A. Yes, sir.  Q. That is the only time he ever bothered you?  A. Yes, sir.  Q. Who did you first tell that he did you this way?  A. I didn't tell anybody but Miss Allen.  Q. You didn't tell Miss Allen about it until she asked you?  A. Yes, sir.  Q. You didn't tell anybody about it until they asked you?  A. No, sir.  Q. You told her nothing like that took place? A. Yes, sir. Q. Who was the next person you told about it?  A. The law asked me.  Q. Who, Pete Woods?  A. I don't know which one.  Q. You first told him that nothing like that happened?  A. Yes, sir.  Q. Who was the one that told you that you must tell something did happen?  A. Miss Allen did.  Q. Just what did Miss Allen say?  A. She just asked me if he licked me or anything.  Q. And you first told her he didn't?  A. The first time. Q. How come you to tell her he did?  A. I don't know.  Q. Why did you tell her that?  A. I don't know."

By agreement the reporter read Lenora Curtis's testimony in the case tried March 27th.  It was in part as follows:

"Q. Was Dora there when he licked you?  A. No, Ma'am.  Q. Were you there when he did something to Dora?  A. Yes.  Q. What did he do to Dora?  A. He kissed her.  Q. Kissed her and what else?  A. Nothing.  Q. Was there another man in there?  A. Yes.  Q. Who was the man?  A. I don't know.  Q. Was it the old man you saw in the hall one day when you came up here before?  A. Yes. Q. Is his name Van Curon?  A. Yes, ma'am.  Q. What did he do, Hun?  A. He didn't do anything that day.  Q. Were

you standing up or lying down? A. Standing up. Q. What did Mr. Roberts give you for you letting him lick you? A. A: Baby Ruth."

Cross-examination:

"Q. Now, when you went down there, Dora was with you, wasn't she? A. Yes, ma'am. Q. And Mr. Van Curon was in the store too? A. Yes, ma'am. Q. Mr. Roberts is blind, isn't he? A. Yes, ma'am. Q. Now, what was Dora doing? A. Dora wasn't there that time. Q. Wasn't Mr. Van Curon there? A. Yes, nobody else. Q. Well, what did you do when you got back there, you and Dora? A. Dora —I don't know what Dora did. I didn't do anything. Q. He didn't lick you that day? Did he? A. No. Q. Didn't you tell Judge Willoughby that you and Dora were down there and that Mr. Roberts licked you behind the counter and that Mr. Van Curon licked Dora in front of the counter? A. He didn't lick Dora. Q. I mean Mr. Van Curon? A. He didn't lick Dora either. Q. Did you tell Judge Willoughby that? A. No. Q. Did you see Mr. Roberts when he licked Dora? A. He didn't lick Dora; Q. Did Mr. Van Curon lick you? A. No. Q. Didn't you testify in this case that Mr. Van Curon licked you too, before Judge Willoughby? A. Well, Mr. Roberts was the only one that licked me. Q. Little girl, haven't you forgotten, don't you remember that you were out there with Mr. Harrison in the hall and you pointed Mr. Van Curon out and told him that he licked you too and they had him put in jail? Do you remember that? A. Yes, ma'am. Q. And did you tell Mr. Harrison that Mr. Van Curon had licked you? A. Yes, ma'am. Q. And you told Judge Willoughby that when you testified before here? A. Yes, ma'am. Q. And you went and pointed the old man out? A. Yes, ma'am. Q. And they took him and put him in jail? A. Yes, ma'am. Q. You have been going to the store nearly every day, hadn't you? A. Yes, ma'am. Q. You have been getting candy down there? A. Yes, ma'am. Q. And after this happened you continued to go there? A. Yes. Q. And I will ask you if your daddy didn't tell you if you didn't tell this he would whip you? A. Yes, ma'am. Q. And you

told your daddy it wasn't so, didn't you? A. Yes, ma'am. Q. And your daddy told you if you didn't say it was so he would whip you, didn't he? A. Yes, ma'am."

Redirect:

"Q. Did you talk to your school teacher, Miss Allen? A. Yes. Q. And then you told your daddy the truth about it? A. Yes, not that day. I told him the day after that. Q. You didn't tell me before that Dora was there one time and watched Mr. Roberts lick you? A. Dora wasn't there that day. Q. Was she ever there when he licked you? A. No, ma'am. Q. Were you ever there when he licked her? A. No, ma'am."

As reasons for reversal, many errors are assigned.

Upon arraignment defendant demurred to the information on the grounds that it does not state facts sufficient to charge an offense and that it is uncertain and insufficient in not alleging the particular circumstances of the offense sought to be charged. The demurrer was overruled.

The charging words are that the defendant did "unlawfully and feloniously make an assault in and upon one * * *" and did "unlawfully annd feloniously and against the order of nature have a venereal affair with the said Dora McNeil and did commit the abominable and detestable crime against nature."

Our Penal Code, section 2553, St. 1931, gives no definition of the crime which the law with due regard to the sentiments of decent humanity has always treated as one not fit to be named.

The offense consists in a carnal knowledge, committed against the order of nature, with mankind or with a beast. Borden v. State, 36 Okla. Cr. 69, 252 Pac. 446; Ex parte De Ford, 14 Okla. Cr. 133, 168 Pac. 58.

The information is sufficient and the demurrer thereto was properly overruled.

The next contention is that the trial court erred in overruling defendant's motion for a continuance. The record shows that on the 3d day of April defendant entered his plea of not guilty. On that day the case was called for trial and defendant presented his motion for a continuance duly verified. It is in part as follows:

"That he cannot safely go to trial at this term of court for the want of testimony of one —— Van Curon; that on the 29th day of March, 1934, he filed with the court clerk his præcipe for subpœna, for said witness and that on the same day and date subpœna was issued for said witness and delivered to the sheriff of Pontotoc county. That on the 3rd day of April, 1934, sheriff returned said subpœna with the notation thereon that said witness could not be found in Pontotoc county; that said witness lives in Pontotoc county; that he makes his home either with a son-in-law who lives in North Ada, or a son who lives in North Ada, or a son who lives near Lovelady School House, about eight miles east of the city of Ada; that this defendant has done and performed all acts in his power to secure said witness, but has been unable to secure the attendance of said witness, and that the attendance of said witness can be procured at the next term of this court.

"That by this witness this defendant expects to prove and can prove, that one of the prosecuting witnesses has testified at the preliminary hearing, that the act complained of and charged in the information was committed in the same room in which said witness was present; that said prosecuting witness testified that said witness was present and that he, the witness, participated in the act complained of in the information; that this defendant can prove by said witness, and expects to prove by him, on the trial of this cause, that no such act or acts as charged in the information were committed in the room while he was present and that had such act taken place in the room as

testified by the state's witness, that he could have and would have known such act or acts took place.

"That the testimony of said witness, Van Curon, is true, and that this defendant knows that the same is true, and that he can prove the same, and expects to prove same by said witness; that he cannot prove said facts by any other witness. That said witness is not absent with the procurement of the defendant.

"That this application for continuance is not made for delay, but made in good faith, in order that justice may be done."

The record recites:

"The state being present by its attorneys, Truman Harrison, county attorney, Vol Crawford, assistant county attorney and D. D. Brunson, special prosecuting attorney, and the defendant being present in person and by his attorneys, Wimbish & Wimbish, and King & Crawford; and thereupon the said motion was read to the court by Mr. Wimbish, Sr.,and thereupon proceedings were had as follows, to wit:

" 'By Mr. Wimbish: Supplemental to the facts as stated in the sworn affidavit, the defendant says that a companion case was set for trial in this court on the 27th day of March, 1934, that prior to that time he had caused a subpœna to issue for this witness and that there was no return filed by the officer and that he was forced to procure the witness himself by sending his son-in-law out and bringing the witness into court; and that said witness, Van Curon, testified on said trial substantially to the facts as set out in the application for a continuance herein; that the witness Van Curon is about 89 years old and has lived in Pontotoc county for 25 years, bears an excellent reputation and that his testimony is such that this defendant believes that any jury will give full faith and credence to any testimony he might give in this case. And I want to add this: They told me they were not going to try this case and I couldn't get any satisfaction out of the county at-

torney, even up until this date, and that subpœna issued on that date.

" 'By Mr. King: I was under the impression that the case would be continued from the statement of the county attorney on yesterday. He suggested to me that "Let's continue this case" and that he didn't want to try it and I thought it would be done.

" 'By Mr. Harrison: We would like for the record to show that the trial docket was set twelve days before the beginning of this term of court, to wit, the 26th day of March. The state does not believe that due .diligence has been used or exercised in procuring the attendance of said witness, and the state for said reason resists the motion of the defendant for a, continuance.

" 'By the Court: The motion for continuance is over-ruled. Exception reserved.' "

After the introduction of evidence on the part of the defendant, he requested the court for permission to offer proof supplemental to the evidence offered in support of his motion for a continuance and asked that the jury be withdrawn.

In the absence of the jury Clarence Oliver testified that he knew Mr. Van Curon who had testified for the defendant in the previous case, and that he knew Mrs. Lou Houston, daughter of Mr. Van Curon; that she had told him that the county attorney had been telling all winter if the old man Van Curon did not leave here he was going to send him to Norman; and that Charley Curtis, the father of Lenora, had said they had enough against the old man if he did not leave they would stick him too.

Mrs. Lou Houston, daughter of the witness Mr. J. M. Van Curon, testified that her father lived with her except three years he had spent at Ardmore in the Confederate Soldiers Home; that he now had been back about two years.

About 4 o'clock yesterday he went away; that a friend came out and told her the county attorney said that if my father was in town yesterday, that if another party did not swear out a warrant for dad's arrest he would; that he had plenty of evidence against him.

Cross-examination by Mr. Harrison:

"Q. Who told you that, Mrs. Houston? A. Bill Wiggins was the man that came out there and told that. Q. You don't contend that I did make that statement, you just say that is what they told you? A. That is what they told me. Q. And that was Bill Wiggins. Did he say that I said that or tell you that Charley Curtis said he was going to attempt to get a warrant sworn out for him? A. The way I understand it, it was told to me, he said he told him that you said if he didn't swear out a warrant for him yesterday that you would. I reckon you are Truman Harrison, I don't know. Q. Who did Bill Wiggins say told him all this? A. Charley Curtis."

Now comes defendant and moves for a mistrial and to continue the case because of the absence of the witness Van Curon.

The granting or refusal of a continuance rests in the sound discretion of the trial court, however, the discretion which the trial court exercises must be judicial, not arbitrary, and must be exercised in conformity with the law of the state.

Continuances should always be granted, when from the showing justice requires it, to enable the accused to procure all legal and competent evidence for a fair presentation of the defense, where due diligence to obtain the same has been shown.

We are of the opinion that under the peculiar circumstances surrounding this case that the refusal of the trial

court to continue the case at least to another day in the term was manifestly an abuse of judicial discretion.

The application conforms to the requirements of the statute and the diligence to procure the attendance of the absent witness Van Curon was unquestionably sufficient. The testimony of the absent witness was material to his defense, and it reasonably appears that the attendance of this witness could be secured by a continuance.

Speedy trials and the prompt enforcement of the criminal laws, however desirable, should only obtain with due regard for the rights of the accused to enable him to have a fair trial.

Under the assignment that the verdict is contrary to law and the evidence, it is urged that the testimony of the complaining witness Dora and the witness Lenora is too contradictory, inconsistent, and weak to support the verdict, therefore the court erred in overruling defendant's motion for a directed verdict of acquittal on the ground that the evidence was insufficient to warrant a conviction.

After a careful examination of the entire record, we are unable to reconcile the conflicting testimony, on the part of the state. It is undisputed that the complaining witness never made a voluntary complaint. She denied, when asked by her teacher, that any such lewd act ever occurred and made the same denial to her parent. Both these witnesses testified that they were threatened with whipping unless they admitted it and it was only after these threats that they consented to charge defendant with having committed such acts. Also, there is a direct contradiction in the testimony of the two witnesses as to whether defendant committed the act charged.

With these facts before us, we are inclined to think

that the testimony of these two witnesses was more a matter of imagination than memory, or that the same was maliciously inspired

The defendant testifying in his own behalf denied the charge and produced a number of witnesses as to his good character.

The crime charged belongs to that class of offenses of which it has been often said, the charge is easily made, hard to prove, and still harder to disprove. In such cases jurors are sometimes moved by abhorrence of the offense to convict upon slight evidence; therefore, the court will carefully examine the record to see that there was some substantial evidence to warrant a verdict of guilty.

Carefully considering the testimony in this case, it is difficult to see upon what ground the jury could return a verdict of guilty and assess the maximum punishment.

The defendant was entitled to the full benefit of the legal presumption of innocence and could not properly be convicted unless the evidence established his guilt beyond a reasonable doubt.

Upon the whole case, we are convinced that the verdict was more the result of prejudice and partiality than the calm and dispassionate conclusion of the jury upon the facts in evidence, and we find that the evidence is not sufficient to sustain the conviction.

For the reasons stated, the judgment of the trial court is reversed.

DAVENPORT, P. J., and EDWARDS, J., concur.