Wilburn Alfred **BERRYMAN**, Plaintiff in Error,

v.

**STATE** of Oklahoma, Defendant in Error.

No. A-12122.

Criminal Court of Appeals of Oklahoma.

April 13, 1955.

Rehearing Denied May 18, 1955.

Sid White, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

The defendant, Wilburn Alfred Berryman, was charged by an information filed in the District Court of Oklahoma County with the detestable and abominable crime against nature sometimes referred to as sodomy; a jury was waived, defendant was tried, found guilty and sentenced to serve a term of 5 years in the state penitentiary and has appealed.

The following assignments of error are presented:

1. The court erred in overruling the motion to quash the information.

2. The court erred in overruling the demurrer to the information.

3. The evidence showed defendant was guilty of fellatio which was not a crime within the terms of the statute and therefore the evidence was insufficient to sustain the conviction.

4. The defendant was and is insane and should not be punished.

In connection with the first assignment of error, the defendant contends that the defendant had been charged by an information with sodomy at the time a grand jury was convened; that defendant was entitled to have this charge investigated by a grand jury and when it did not so investigate and return an indictment against him, the prosecution cannot proceed upon the pending information but should be quashed.

This question has been decided adversely to the contention of defendant in the case of Jordan v. Turner, 95 Okl.Cr. 307, 245 P.2d 748, wherein it was held:

"The Constitution of Oklahoma (Art. 2, Sec. 17) authorizes prosecutions for felonies by information after examination and commitment by a magistrate, or by indictment by grand jury. These are concurrent remedies and the prosecution may be by either mode.

"It is the duty of the grand jury to inquire into the case of every person imprisoned in jail on a criminal charge and not indicted. 22 O.S.1951 Sec. 338.

"Where prisoner, charged by a preliminary complaint before a committing magistrate for the commission of a felony, was released on bond, and subsequent to filing of complaint, a grand jury was convened, and upon final discharge of grand jury the case against petitioner had not been considered and no indictment had been returned, held, the failure of the grand jury to indict

the prisoner did not operate to dismiss the charge against prisoner * * *."

The sound reasoning in support of the above rules of law are elaborated upon in the body of that opinion.

The second and third assignments of error are directed to the same proposition and will be considered together. The information filed against the accused alleged that he "did unlawfully * * * commit the abominable and detestable crime against nature by then and there taking the penis of the said Jack Eugene Lacefield into his mouth and sucking the same."

The proof of the State included the testimony of Jack Lacefield, a 15 year old boy who lived in Oklahoma City and upon whom the crime was allegedly committed, together with two eyewitnesses to the alleged act, Jackie Johnson, who testified he was present in the automobile at the time the act was committed by the defendant, and S. C. Killman who lived on the premises to the rear of where the act was allegedly committed and who happened to walk by the automobile of defendant and saw defendant committing the act as alleged in the information and reported it to the officers. According to the testimony of the youths, the act had been repeated with each of them on other occasions and evidently if it had not been for Mr. Killman observing what was being done and reporting it, nothing would ever have been said or done about the alleged crime.

It is the contention of counsel for the accused that the statute is indefinite and unenforceable and not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalty and secondly, it is contended that the acts charged against the accused and for which he was convicted do not constitute the crime of sodomy.

The statute in question provides:

"Every person who is guilty of the detestable and abominable crime against nature, committed with mankind or with a beast, is punishable by imprisonment in the penitentiary not exceeding ten years." 21 O.S.1951 § 886.

"Any sexual penetration, however slight, is sufficient to complete the crime against nature." 21 O.S.1951 § 887.

The above statute has had the consideration of this court on many occasions. Ex parte DeFord, 14 Okl.Cr. 133, 168 P. 58; Borden v. State, 36 Okl.Cr. 69, 252 P. 446; Roberts v. State, 57 Okl.Cr. 244, 47 P.2d 607; Cole v. State, 83 Okl.Cr. 254, 175 P.2d 376; Lefavour v. State, 77 Okl.Cr. 383, 142 P.2d 132; Woody v. State, 95 Okl.Cr. 21, 238 P.2d 367. Counsel for the accused cites cases which sustain his contention that the act of sodomy as known to the common law was defined as the copulation per anus of a man with another man or with a woman or the copulation of a man or a woman with a brute animal. The courts who so hold go back to the statutes of Henry VIII's time (25 Henry VIII, Chapter 6) which prohibited buggery with man or beast under penalty of death and buggery included only genitalanal contact between man and man or between man and woman and what is now termed bestiality, which is genital contact with animals. It did not include fellatio (oral genital contact) or cunnilingus (oral vaginal contact).

Because of the omissions of the statute of the 1500's a defendant convicted of sodomy by an English court in 1817 for an act of fellatio accomplished with a boy 7 years of age was directed to apply for a pardon. The judges of England had met and decided that these facts did not constitute the crime of sodomy. Rex v. Jacobs, 168 Eng.Rep. 830. Some American courts felt compelled to follow the authority of this case but the majority of the courts who have considered the matter have interpreted their sodomy and crime against nature statutes so as to prohibit fellatio. The Oklahoma statute does not mention sodomy but is directed at the "abominable crime against nature" which would be more comprehensive than sodomy as defined by the common law. The states which have statutes similar to ours are virtually unanimous in holding that it prohibits oral genital contact (fellatio). The Criminal Court of Appeals of Oklahoma has adopted this view. In the early case of Ex parte DeFord, supra

[14 Okl.Cr. 133, 168 P. 59], Judge Matson, speaking for this court gave an extended discussion of the question involved as to whether the oral genital contact of a male with a male was prohibited by our statute. He quoted extensively from the case of State v. Start, 65 Or. 178, 132 P. 512, 46 L.R.A.,N.S., 266, wherein it was stated:

" 'The authorities cited by the defendant have implicitly followed this ipse dixit of the English court without giving any reason therefor, always controlled solely by the doctrine of stare decisis, and often with protests against the authority of the rule. Although there are no common-law crimes in this state, we must turn to that law for the definition of certain crimes where the meaning thereof is not set forth in our Code. The rule at common law was that: "All unnatural carnal copulation whether with man or beast seems to come under the notion of sodomy." 1 Hawkins, Pleas of the Crown, p. 357. In the order of nature the nourishment of the human body is accomplished by the operation of the alimentary canal, beginning with the mouth and ending with the rectum. In this process food enters the first opening, the mouth, and residuum and waste are discharged through the nether opening of the rectum. The natural functions of the organs for the reproduction of the species are entirely different from those of the nutritive system. It is self-evident that the use of either opening of the alimentary canal for the purpose of sexual copulation is against the natural design of the human body. In other words, it is an offense against nature. There can be no difference in reason whether such an unnatural coition takes place in the mouth or in the fundament—at one end of the alimentary canal or the other. The moral filthiness and iniquity against which the statute is aimed is the same in both cases. Each is rightfully included in the true scope and meaning of the common-law definition quoted above from Hawkins. By far the better rea-

soning is found in the cases of State v. Whitmarsh, 26 S.D. 426, 128 N.W. 580; Herring v. State, 119 Ga. 709, 46 S.E. 876, and others which might be cited.' "

In State v. Whitmarsh, 26 S.D. 426, 128 N.W. 580, 581, it was said:

"It has been universally held that, in informations or indictments charging crimes of the nature of the one with the intention of committing which appellant was charged, it is unnecessary to go into the loathsome and disgusting details thereof. Even in the time of Blackstone this rule was applied to the common-law crime of sodomy as is evidenced by the following quotation from 4 Blackstone, Commentaries, 215: 'I will not act so disagreeable a part to my readers as well as myself as to dwell any longer upon a subject the very mention of which is a disgrace to human nature. It will be more eligible to imitate the delicacy of our English law, which treats it, in its very indictments, as a crime not to be named.' Bradford v. State, 104 Ala. 68, 16 So. 107, 53 Am.St.Rep. 24; Commonwealth v. Dill, 160 Mass. 536, 36 N.E. 472; 20 Ency.P. & P. 275; State v. Williams, 34 La.Ann. 87. * * * The question presented is, whether or not the crime against nature when committed by one male person upon another male person can be committed through the mouth, or whether it can only be committed through the anus. It must be conceded that under the common law sodomy could not be committed by means of the mouth; the reason given by all the authorities being that given in Russell on Crimes *937: 'To constitute this offense, the act must be in that part where sodomy is usually committed.' The mere statement of the above reason shows the unsoundness of such a distinction. It concedes that the act is sometimes committed in some other part, and, by conceding that the act committed in such other part is not the usual offense, the statement concedes that the act, if com-

mitted in such other part, would be still more unnatural, because, if not more unnatural, it would not be more unusual. Certainly this unusual act is many times more 'detestable and abominable' than that made criminal at common law. As was well said by the court in State v. Vicknair, 52 La.Ann. 1921, 28 So. 273: 'But why in the common-law courts the use of the mouth should not have been considered as much against nature as though the act were committed per anus is incomprehensible.' If it should be conceded that our statute, which refers to the crime, not by the use of word 'sodomy,' but by the use of the phrase 'detestable and abominable crime against nature,' does not, by such words, include more than is included in the one word 'sodomy,' yet should we feel bound by a construction based upon no sounder reasoning? What would we think of the reasoning of a court that should hold that the killing of a human being in some peculiar and practically unheard of manner was not murder simply because such killing was committed in an unusual way?"

As to the decision of this court in Ex parte DeFord, supra, we adhere to the rule of law established in that case, and followed in the case of Borden v. State, supra, Roberts v. State, supra and Lefavour v. State, supra. By those decisions, this court is definitely committed to the rule that copulation per os as well as per anus is prohibited as constituting the abominable and detestable crime against nature.

■ We agree with the soundness of the rule that penal statutes should be sufficiently explicit so that one may know what acts are prohibited so that he may not become liable to its penalties. But the abominable and detestable crime against nature, or sodomy as it is sometimes called, has always been deemed the pariah of crimes and the acts constituting it but seldom specifically defined.

The word "sodomy" is derived from Sodom, the ancient city reported to have been destroyed by fire and brimstone in punishment for its unspeakable vices. (Genesis 19:1–35.) Under the Mosaic code, persons guilty of the abominations of that city were called "Sodomites" (Deuteronomy 23:17) and were punished with death. (Leviticus 18:22, 23, 29.)

In Burdick's The Law of Crime, Vol. 3, Section 878, it is stated:

"In sodomy committed by man with man, or man with woman, the unnatural copulation must be, according to the common law, a rectal coitus (per anus). Sodomy is not committed at common law, per os, that is, by means of the mouth, but under statutes, particularly those punishing 'sodomy or other crime against nature', or, the word sodomy being omitted, 'the detestable and abominable crime against nature committed with mankind or with beast', such an act is indictable."

■ Many courts hold that a description of the offense in the terms of the statute without stating further the particulars of the offense is sufficient because the very alleged sexual behavior is such as should not be described among Christians. However, here the information did give the particulars of the offense and the information certainly cannot be said to be too indefinite in that regard. The contention of the defendant must stand or fall upon the proposition that copulation through the mouth is not prohibited by the statute. For us to so hold would be to overthrow the long line of decisions to which we have long adhered. However, at the insistence of counsel for the accused, we have again examined those opinions and we find that the reasoning sustaining the rule of law set forth in them is sound and if the question were arising for the first time in this jurisdiction, we would be impelled to adopt the reasoning which was adopted by Judge Matson in the DeFord case and followed in the other decisions of this court above cited. We emphasize again that out statute does not mention the word sodomy, but punishes the "abominable and detestable crime against nature" which includes not only sodomy as defined at common law but all unnatural sexual copulation.

In connection with the fourth assignment of error pertaining to the alleged insanity of the accused, the record discloses that after the charge was filed against accused, he was committed to the Eastern State Hospital at Vinita for observation as an alleged mental case. On November 6, 1953, he was released by the hospital and it was reported by the superintendent of the hospital that the accused was sane. Later the accused filed a demand for a trial as to the question of his present sanity and this trial was held on February 17, 1954, at which trial the jury returned a verdict finding the defendant was sane. Dr. F. M. Adams, superintendent of the Eastern State Hospital at Vinita, testified at the sanity trial. By agreement, a transcript of his testimony was introduced as evidence at the trial of the accused before Judge Fogg. There also appeared at the trial Dr. Katis, a professor of psychology at Oklahoma University. Dr. Katis testified that he did not know anything about legal sanity or insanity but that in his opinion, the accused had a mental aberration and was abnormal because of it; "that he has certain impulses which we have all learned to master but are not controllable as far as he is concerned." In none of the testimony of Dr. Katis did he attempt to state that the accused did not know right from wrong.

Dr. Adams testified that the accused had an emotional disturbance or what is generally referred to as "an aberration in relation to his will power," and that in his opinion it could not be cured. He further stated that the accused definitely knew right from wrong. On cross examination the following questions and answers were given:

"Q. Doctor Adams, as a result of your observation and examination of this man do you think he is suffering from a mental disorder? A. I do not.

"Q. Do you think he knows right from wrong? A. He does."

The defendant testifying in his own behalf specifically denied committing the acts attributed to him by Lacefield and Johnson. However, on cross examination he admitted that he had been given a dishonorable discharge after conviction in the army for the crime of sodomy.

The rule is well established in Oklahoma that the test in determining responsibility for the commission of crime is whether the accused knew right from wrong in respect to the act in question and understood the nature and consequences of such act. 21 O.S.1951 § 152. A similar question to that here presented, to-wit: that the accused had an irresistible impulse resulting from a disordered mind and that it thus relieved him from criminal responsibility, was discussed in the case of Sloan v. State, 25 Okl.Cr. 15, 218 P. 717, wherein it was held:

"Under subdivision 4 of section 1511, Comp.Stats.1921, the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has the mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequence of such act.

"An irresistible impulse is not an excuse for the commission of a crime, where the person committing it is capable of knowing right from wrong."

In the body of the opinion it is said:

"It has been pertinently said that in criminal cases the correct issue is not that of sanity, but of responsibility. 1 Whart. & S.Med.Jur. § 112. An uncontrollable impulse of the mind, coexisting with the full possession of the reasoning powers, will not warrant an acquittal on the ground of insanity. The question is always whether the accused, at the time he committed the act, knew its nature and character, and that it was wrong. Whart. & S.Med. Jur. § 152, note 1.

"The doctrine that an irresistible impulse resulting from a disordered mind relieves the criminal responsibility, though the accused was capable of distinguishing between right and wrong with respect to the act in question, is not recognized in this jurisdiction. The capacity to know right

from wrong, and to know that the particular act being committed is wrong, is recognized as the correct rule in Oklahoma to test the question of criminal responsibility. Roe v. State, 17 Okl.Cr. 587, 191 P. 1048; Snodgrass v. State, 15 Okl.Cr. 117, 175 P. 129; Owen v. State, 13 Okl.Cr. 195, 163 P. 548; Smith v. State, 12 Okl.Cr. 307, 155 P. 699; Alberty v. State, 10 Okl.Cr. 616, 140 P. 1025, 52 L.R.A.,N.S., 248. In Roe v. State, supra, it is said:

" 'The statute of this state does not recognize the doctrine that one may be so possessed with an uncontrollable impulse as to compel him to do what he knows to be wrong and a crime, and yet be relieved from all criminal responsibility. A condition might be conceived of an uncontrollable insane impulse sufficient to relieve one of criminal responsibility under our statute; but this would only arise when the diseased condition of the accused's mind was such as to destroy the power of the accused to comprehend the nature and consequences of the particular act, and to know that it was wrong at the time of its commission.' "

J. D. Tuggle was an admitted sex pervert with a long history of perversions. He killed his uncle and his aunt when they caught him having oral vaginal contact with his baby sister. At his trial for murder he recited a long series of sexual acts, one of which was that for a period of several weeks he was a salaried employee for an individual and that his only job was to have oral genital contact with his male employer and that he had to beat on the individual with a rubber paddle while he was performing the act until there was an emission. When his death penalty was sustained by this court it was held:

"A morbid state of affections or passions, or an unsettling of the moral system, where mental faculties remain in a normal, sound condition, cannot excuse actions, otherwise criminal." Tuggle v. State, 73 Okl.Cr. 208, 119 P.2d 857.

■ As to the punishment, counsel contends that the accused should not be committed to a penal institution because he cannot be reformed or cured by punishment. The testimony of the doctors would indicate that this is true, but that is a matter for legislative concern. It is the duty of the Legislature to establish the policy of the State toward these moral derelicts. Our responsibility ends when we have determined whether the accused has been guilty of violating a penal statute and that his trial and conviction was in accordance with law.[1] We have found nothing in this record that would justify us in interfering with the judgment that was rendered.

The judgment and sentence of the District Court of Oklahoma County is accordingly affirmed.

BRETT and POWELL, JJ., concur.

On Rehearing

POWELL, Judge.

Plaintiff in error in support of petition for rehearing filed an exhaustive printed

---

1. In recent months there has been an increase in the number of cases called to our attention which involve homosexuals and other sex deviators. There have been some extensive studies made in recent years of this subject. Jones, "The Study of Homosexuality," Medical Press, January, 1949; Kinsey, Pomeroy and Martin, Sexual Behavior in the Human Male, 1948; Minow, "The Illinois Proposal to Confine Sexually Dangerous Persons," Journal of Criminal Law, 40:-186–197; Henry, Sex Variants, 1948; Sutherland, "The Sexual Psychopath Laws," Journal of Criminal Law, 1950, 40:543–554; Ploscowe, Sex and the Law. Ploscowe states: "Exposure to the sex deviate may have a decisive and harmful effect upon a child's development of a normal sex life as an adult. Despite their differences of opinion, students of homosexuality seem to agree that exposure during adolescence may be the precipitating factor in the adult development of the homosexual or the Lesbian. The law must make it possible to take effective action against twisted adults who use children and minors as sexual objects."

566

brief, and this court in addition heard lengthy oral argument.

 The contention that the statute involved did not clearly set out just what sex acts should be considered "crimes against nature" is not well taken, in view of the interpretation of the statute by this court in Ex parte DeFord, 1917, 14 Okl. Cr. 133, 168 P. 58. Such interpretation, right or wrong, must now be treated with the same binding effect as a legislative interpretation in view of the many sessions of the Legislature since the DeFord case, without any different definition being enacted.

 . It appears to be the general rule that when a construction has been placed upon a statute by the highest court having jurisdiction to fix its meaning, such construction becomes a part of the statute as if it had been written into it originally. Eau Claire Nat'l Bank v. Benson, 106 Wis. 624, 82 N.W. 604. See also Ann.Cas.1914A, 1081; Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, L.R.A.1915E, 1075, Ann.Cas. 1918A, 294.

 That the plaintiff in error well understood the implications of the information and the nature of the crime with which he stood charged and was called on to defend, is apparent without a shadow of a doubt.

The argument that the crime for which the defendant was convicted is of the nature to require the services of a psychologist and psychiatrist, if the purpose of the law is to act as a deterrent rather than punishment for punishment's sake, and that the real purpose of the law is in fact circumvented when a person with the record of the within defendant is placed in a penitentiary among young boys and persons not sexually perverted and thus given

opportunity to follow a compelling urge to prey on such persons, is not without merit. It is said that perverts are not isolated at the Oklahoma State Penitentiary, and that there is no provision to afford them required medical treatment.

 For an exhaustive article treating the obligation of legislatures to provide a method of treatment of sex deviates, see Vol. 8, pp. 497–500, Arkansas Law Review and Bar Assoc. Journal. Of course the Statement of the writer of that article that Oklahoma is one of the states of the Union that has a sodomy statute is incorrect. Rather the Oklahoma statute denounces "the detestable and abominable crime against nature." 21 O.S.1951 § 886.

The need mentioned is probably an acute one, but such matters come within the province of the Legislature, and legislation comes about by the activity of the public. Not long ago no state in the Union provided juvenile courts, but most states now have either special juvenile courts or special rules applying to minors. From newspaper investigations and press reports of persons murdered in penitentiaries resisting the advances of perverts, we think the problem worthy of consideration by the Legislative body. If defendant was not confined to the penitentiary he would, no doubt, from past history, continue to prey on young boys and others.

In this case I would reduce the sentence from five years to four years to more forcefully call attention to the duty of the State to attempt the rehabilitation of sex perverts in view of the demoralization and moral decay brought about by such persons and where the condition with which they may be afflicted is by many becoming recognized as a form of mental disease.