T. V. TURNER v. THE TERRITORY OF OKLAHOMA.

(Filed September 6, 1905.)

*Error from the    District Court of Kiowa    County; before*
*Frank E. Gillette, Trial Judge.*

*Shartel, Keaton & Wells* and *J. A. Powers,* for plaintiff in error.

*P. C. Simons, Attorney General,* for defendant in error.

PER CURIAM: The defendant was indicted and tried for murder. The jury returned a verdict of manslaughter in the first degree. On appeal the judgment was reversed and a new trial granted. When the case came on for trial the second time, the defendant, through his attorneys, objected to being placed on trial for murder, on the ground that, having been convicted of manslaughter only on the first trial, such verdict was equivalent to an acquittal of the charge of murder. The court sustained the contention of the defendant over the protests of the prosecution, and he was tried for the crime of manslaughter in the first degree. The ruling of the court was

erroneous, but the Territory cannot get a new trial on the ground that the defendant might have been convicted of a higher degree of homicide. When the former judgment was reversed, the case stood in exactly the same position that it did before the first trial was had; and, while there are authorities to the contrary, we think that the rule herein announced is the better rule, and it is supported by able authorities. (12 Cyc. 285, *State v. McCord,* 8 Kans. 232; *State v. Miller,* 35 Kans. 328; 10 Pac. 865; *Bohannan v. State,* 18 Neb. 57; *People v. Keefer,* [Cal.] 3 Pac. 818; *Ex. Parte Bradley,* 48 Ind. 548; *Veatch v. State,* 60 Ind. 291; *Waller v. State* [Georgia] 30 S. E. 835; *State v. Billings,* [Mo.] 41 S. W. 778; *State v. Anderson.* [Mo.] 1 S. W. 135; *State v. Simms,* 71 Mo. 338; *State v. Behimer,* 20 O. St. 572; *State v. Bradley,* [Vt.] 32 Atl. 238.)

But, independent of the rule herein announced as a principle of law, our own statute is conclusive. Section 1, of article 14, of chapter 68, (running section 5268) of the 1893 Statutes of Oklahoma, provides:

"A new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given. The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment."

A defendant is given the right of an appeal so that any errors committed against him to the prejudice of his substantial rights may be corrected. Is it not possible that the court may also have committed errors in his favor? Experience has taught us in the trial of criminal cases that there

are probably more errors in favor of a defendant than against him; but. as a rule, only those against him are presented to the appellate court. A defendant should be given a fair and impartial trial, but when he shows that such a trial has not been afforded him and he is given the chance of an entire acquittal by another trial, he must also assume the risk of conviction for the highest crime legally charged in the indictment. The effect of a new trial in circumstances such as are presented in this case is to wipe out and set aside the entire judgment; that part which is favorable to the defendant as well as that part which is against him.

The defendant on the second trial was convicted of manslaughter in the first degree, and we will now consider· his assignments of error. After the jury had been empaneled and some evidence taken, one of the jurors became too sick for jury service and was excused. The court thereupon asked the attorneys to suggest their respective views of the procedure in the circumstances, and directed their attention to section 31 of article 10 of chapter 68 of the Statutes of 1893, which provides:

"If, before the conclusion of a trial, a juror becomes sick, so as to be unable to perform his duty, the court may order him to be discharged. In that case a new juror may be sworn, and the trial begin anew, or the jury may be discharged, and a new jury ·then or afterwards empaneled."

No procedure was suggested, and the court called another juror in the place of the one excused. The record fails to show that any objections were made by the defendant's counsel, but it does appear that when the court directed the clerk to call another juror, one of the defendant's attorneys said: "Defendant excepts." After the Territory and the defendant

had each interrogated the juror called, as to his qualifications, the following conversations and transactions took place:

"By the court: Does the Territory now desire to exercise a peremptory challenge?

"By Mr. Thacker, county attorney: No sir.

"By the court: Does the defendant at this time desire to exercise a peremptory challenge?

"By Mr. Keaton: (for defendant) If the court please, we would like to claim the right and exercise a peremptory challenge, but if we could not exercise one after this one, as each juror is called, it would not be of any avail to us.

"By the court: If you desire to exercise a peremptory challenge you may.

"By Mr. Keaton: As to any of the panel or simply the last juror called?

"By the court: I think you have a right to exercise it as to any of the jury as now constituted; you have the right to exercise it as to any one of them.

"The Territory objects; objections overruled; Territory excepts."

Thereupon the defendant challenged Mr. Owen, who was one of the original jurors sworn to try the case.

The court proceeded upon the theory that each party was entitled to nine challenges after the sick juror had been excused, and the Territory waived the first two and exercised the remaining seven. The defendant exercised the entire nine. The regular panel having first been exhausted, two special venires were served before a jury was finally secured. The defendants attorneys excepted to the issuance of each of these venires, but made no formal objection. There is, however, a statement by the defendant's counsel in the record, after the defendant had exercised his eighth peremptory challenge to the effect that the defendant objected to the calling

of any of the jurors summoned on the second venire; and when the court requested counsel to state the grounds of his objections, he said that he had "no special grounds except that counsel claims that the court has no power to empanel the jury by the methods that are being taken." Then, just before the jury was sworn, the defendant's counsel asked to be allowed an additional challenge, for no other reason than they thought it was necessary to ask an additional challenge in order to save defendant's objections to the manner of the selecting of the jury. The defendant nowhere claims that he was not tried by a fair and impartial jury, nor that the members of the jury were not all qualified under the statute. His contention is that the jury was not properly selected. Conceding, for the sake of argument, that the jury was not empaneled, technically as the law directs, after the sick juror was excused, the defendant is in no position to urge that point. While the jury was being empaneled the court repeatedly requested the attorneys for the defendant to state the grounds of their objections, and they wholly failed to do so in a way that was calculated to direct the attention of the court to the objections relied upon at this time. They say in their brief that the court should either have called one qualified juror from the original venire to fill the panel, and begin the trial anew, or that he should have discharged all of the jurors previously empaneled and then proceeded to the selecting of an entirely new jury; and with this theory we agree. But why did not counsel make their position known to the trial court? They withheld their views then, and were the first to take advantage of the challenges to which the trial court thought them entitled. Their acts then, bind their client now. The action of the court in giving to each of the parties the privilege

of challenging nine jurors was, in effect, the empaneling of a new jury. (*People v. Stewart,* 64 Calif. 60-61.)

The jurors who were first empaneled might possibly have been excused for cause, having heard a part of the evidence before the juror got sick, but such an objection would address itself to the sound discretion of the court. The defendant did not seek to do this, and the fact that part of the jury who tried him had heard a part of the evidence before, could be waived by the defendant. (*Queenan v. Territory,* 11 Okla., 262.)

The objection is purely technical, and without any substantial merit; and it has been held that a criminal case will not be reversed on account of technical errors, unless they are such as may have prejudiced the defendant in his substantial rights. (*Hodge v. Territory,* 12 Okla. 108.)

The appellant insists that the court erred in excluding evidence offered by him. We have examined the record in relation thereto, and have failed to find where any evidence was excluded which could reasonably have changed the verdict. Hence the point must be determined against the defendant.

The defendant next complains of certain instructions given by the court, which, in effect, told the jury that, where a man is unlawfully attacked by an adversary, he must act with reasonable courage, or that he should act as would a reasonably courageous man situated in a similar position. The instructions correctly stated the law. The crimes act provides that, "homicide is justifiable when committed in the lawful defense of such person, etc. * * * when there is a *reasonable ground* to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished." The law only authorizes one to

take human life when it reasonably appears necessary to do so, and he is not justified in killing his fellow man through mere cowardice. The law presumes that a defendant has a reasonable amount of intelligence; that he is reasonably prudent, and that he has the power to act with reasonable courage; and the burden is on him who claims the contrary to at least raise a reasonable doubt of the existence of such presumed fact. The argument that the transaction must be viewed from the defendant's standpoint has no application to the rule stated in the instructions, for that may be conceded without affecting the law as given by the court. When we say that a homicide must be viewed from a defendants standpoint, this only means that the jury must take the facts as they were presented to him in his situation at the time, and from them determine whether he acted upon reasonable appearance of danger. The condition of a defendant may always become an issue in the trial of a criminal case; but, until properly raised, the courts will not assume that mental inferiority exists. (*Wells v. Territory,* 14 Okla., p. 436.) The giving of certain instructions on the defense of insanity are made the subject of complaint. They charge the jury, in effect, that the law does not recognize the theory of uncontrollable impulse as an excuse for crime, so long as the defendant has the mental capacity to know right from wrong and to know and understand the nature and consequences of his acts. The rule stated has been adopted by this court. (*Maas v. Territory,* 10 Okla., 714.) Certain instructions requested by the defendant were refused, and exceptions saved; but this was not error, as the jury was fully instructed as to all matters in issue, and, taking the instructions given altogether, they fairly stated the law of the case.

The judgment of the lower court is hereby affirmed, at the cost of the plaintiff in error.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.