GILBERT ARTHUR GALLAGHER v. STATE.

No. A-10419.   June 6, 1945.

(159 P. 2d 562.)

16

Jerome Sullivan and Brown & Cund, all of Duncan, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Gilbert Arthur Gallagher, was charged in the district court of Stephens county with the crime of murder; was tried, convicted of manslaughter in the first degree, and sentenced to serve 25 years in the State Penitentiary, and has appealed.

The defendant shot and killed his neighbor, C. L. Hood, early in the afternoon of July 17, 1942, in the yard of the Hood home. Hood was 64 years of age. On the morning of the day of the homicide, Peggy Ree Gallagher, 16-year-old daughter of the defendant, came to the Hood premises to get some peaches. The deceased accompanied her to the orchard. Later, when Peggy Gallagher returned to her home, she told her mother and father that the deceased had made suggestive immoral statements to her while she was in the orchard with him. The defendant and his wife borrowed a shotgun from a neighbor, drove over to the Hood home where Hood was sitting on the porch reading a newspaper.

The wife of the deceased testified that when the defendant and Mrs. Gallagher came to their home, the de-

fendant stated to deceased, "Tell your wife what occurred between you and Peggy Ree in the orchard or I'll shoot your ———— ———— brains out." That her husband had a newspaper and a pair of eyeglasses in his hand and as he was standing there not saying a word, the defendant shot, killing her husband instantly.

The defense interposed was that of temporary insanity and self-defense. In connection with the plea of self-defense, the defendant testified that when the deceased came down off the steps of the porch and started towards him, he had a paper in his left hand and was holding his right hand as if he had a gun behind the paper. That he thought the deceased had a gun. That deceased suddenly turned his body to the right as if to shoot the defendant and defendant fired because he thought his life was in danger.

The sufficiency of the evidence is not questioned, so it is not necessary to give a more detailed statement of the facts.

It is first contended that the court committed reversible error in his instructions to the jury in refusing requested instructions by the defendant. The defendant requested the following instruction:

"You are instructed, gentlemen of the jury, that it is the duty of each and every member of the jury in this case to decide the issues presented for himself, and if, after consideration of all the evidence in the case and the instructions of the Court on the law, and from consultation with his fellow jurors, there is a single juror who has a reasonable doubt of defendant's guilt, it is his duty under his oath, to stand by his conviction and favor his verdict of not guilty, so long as he entertains such doubt."

This identical instruction was discussed at length in the case of Frazee v. State, 79 Okla. Cr. 224, 153 P. 2d 637,

643. After reviewing many decisions from other jurisdictions, we held in that opinion that the refusal to give such requested instruction was not reversible error. In the body of the opinion, it is stated:

"It is the duty of jurors to reason together and harmonize their discordant views where possible. A juror should not consent to a verdict which he thinks is contrary to the evidence out of a mere deference to his fellow jurors. Yet, he may consider whether the doubt which he entertains is a reasonable one which makes no impression on the minds of others equally honest and equally intelligent with himself, who have heard the testimony out of which the doubt arises and he may properly change his views because of this consideration. In other words, he can properly doubt the correctness of his own opinion when it is not concurred in by his fellow jurors, and may without a violation of his oath, consent to a verdict, which he, if he were acting alone, would not render.

"While the court might have, in his discretion, given the requested instruction, yet, his refusal to do so is not error. The majority of the decided cases so hold. Such instruction undoubtedly has a tendency to appeal to an obstinate juror, and the jury room is no place for pride of opinion or obstinancy for the reason that it is the duty of the jurors to discuss the evidence in a spirit of fairness and candor with each other and with an open mind toward the views of their fellow jurors."

The trial court gave a sufficient statement of the law when he instructed the jury that their verdict must be unanimous and that unless all could agree, no verdict could be returned.

The defendant further contends that the court erred in the instruction which he gave to the jury in connection with the defense of temporary insanity. The instructions which were given are the same as were given in the case of Roe v. State, 17 Okla. Cr. 587, 191 P. 1048. The Roe

case was a well-reasoned opinion which analyzed the statutes on insanity as a defense in criminal cases and reviewed the various decisions of this court prior to that time. The instructions which were given by the trial court were approved and that decision has been followed by many later decisions of this court. Tittle v. State, 44 Okla. Cr. 287, 280 P. 865; Arms v. State, 49 Okla. Cr. 34, 292 P. 76; Merrick v. State, 56 Okla. Cr. 88, 34 P. 2d 281; Kennemer v. State, 59 Okla. Cr. 146, 57 P. 2d 646; Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205.

The record is so lacking in any proof of defendant's insanity that the court would have been entirely justified in refusing to give any instruction on insanity. In the defendant's testimony, he relied altogether upon his plea of self-defense.

Under the record, the court was also justified in giving an instruction on manslaughter in the first degree.

Several witnesses testified to the good reputation borne by the defendant in the community where he resided, as a peaceable, law-abiding citizen. On cross-examination of one of these witnesses, a school teacher, counsel asked:

"Q. I am asking you if it was not generally discussed up in that community that he was drunk and intoxicated at the schoolhouse last Christmas? Mr. Sullivan: Comes now the defendant and objects to this line of examination, unless counsel is in good faith in asking the questions and expects to offer proof of same. Court: Yes, sir. Objection will be sustained unless you expect to prove it. * * * Mr. McCuistion: I am not asking anything that I am not in good faith about."

Counsel then proceeded to inquire about the alleged drunkenness at the schoolhouse to which the witness answered, "I heard that Mr. Gallagher had had a drink."

On cross-examination of the witness Kent, Chief of Police of Marlow, the following questions were asked:

"Q. I will ask if you didn't yourself receive a complaint up there in Marlow one time and looked for the defendant. A. I looked for the defendant. Q. You looked for the defendant? A. No, sir. Mr. Sullivan: We now ask counsel if he is in good faith in asking these questions and if not, not to ask those questions. Mr. McCuistion: If they will permit I will prove it. Q. You know Dr. McLain up there? A. Yes, sir. Q. Did you hear about the trouble he had with Dr. McLain? A. No. sir. Q. You didn't hear Dr. McLain call the police there and ask that somebody come there, it might have been you? A. No, sir. Q. Never heard that to this day? A. No, sir, if he had I believe I would have heard it. Q. You never talked to Dr. McLain about it? A. No, sir."

Counsel contend that this examination was improper and base their objection upon the ground that the state did not attempt to offer witnesses in rebuttal to prove the truthfulness of questions which they had asked on cross-examination and which had been denied. That this conclusively showed that such questions were not asked in good faith.

In the cross-examination of a witness called to testify to the defendant's good reputation as a law-abiding citizen, it is permissible to ask the witness on cross-examination if he had heard of various specific acts of the defendant inconsistent with such reputation. Stouse v. State, 6 Okla. Cr. 415, 110 P. 271; Johnson v. State, 54 Okla. Cr. 143, 16 P. 2d 263; Bond v. State, 53 Okla. Cr. 224, 11 P. 2d 200; Carroll v. State, 24 Okla. Cr. 26, 215 P. 797.

It is improper for the cross-examiner to inquire of a witness concerning alleged acts of the defendant which are creatures of the examiner's imagination and which

did not occur, for the purpose of leaving the impression with the jury that his reputation is bad. The examiner should act in the utmost good faith and should be severely reprimanded by the trial court if found guilty of bad faith in his cross-examination of the witness along this line. The extent of such cross-examination is ordinarily a matter in the sound discretion of the trial court. However, it would be improper for the state, over the objection of counsel for the defendant, to offer in evidence proof of specific acts of the defendant about which inquiry is made, where such acts are denied. These alleged acts are collateral to the issue and would come under the general rule of law that upon the trial of one accused of crime, proof of the commission of other crimes are not admissible against the defendant. These are collateral to the main case and, if the witness denies ever having heard of these specific acts about which inquiry is made, then the state may not prove that such acts were actually committed. We have carefully read all of the examination of the witnesses in connection with this contention of counsel and we find nothing which would indicate that the prosecution was in bad faith in making the inquiries about which the objection is made.

The defendant next complains of certain alleged misconduct of the jury after the final submission of the case. At the hearing on the motion for a new trial, evidence was introduced in support of this assignment of error. These witnesses testified that on the day the case was finally submitted to the jury, the jury retired for deliberation and remained in the county court room considering the case until about 10 p.m. There were two bailiffs in charge of the jury. As the jurors left the courtroom to go to their jury room to retire for the night, one of the jurors asked permission of one of the bailiffs to speak

to his wife who was standing in the corridor just outside of the courtroom. There were very few spectators in the courthouse at that time. Three or four of them saw one of the jurors speak to a woman and they so testified. However, the state showed that the juror in question lived in the country and merely spoke to his wife in the presence of the bailiff about taking care of the livestock at their farm. Nothing was mentioned about the case on trial. The other jurors were standing four or five feet away, waiting on the juror to speak to his wife. The conversation did not last more than a minute.

It was also shown that as the jurors started down the stairway that one of them happened to think that he had left his overcoat in the room where they had been deliberating. The bailiff stopped the jury on the stairway and one of the bailiffs went back to the room after the juror's overcoat. This bailiff hollered back to the jury that he could not find the coat. The juror whose coat was missing started up the stairs towards the other bailiff but was restrained by the remaining bailiff and admonished that he could not leave. About that time, the bailiff who had gone to the courtroom returned with the juror's overcoat which he had found. Witnesses for defendant testified that they saw one of the jurors standing at the turn of the stairs about five or six feet from the other jurors and that spectators passed him as they were going down the stairway. However, the proof on behalf of the state refuted the fact that any spectators passed and showed that the juror had only started back up the stairway when he was halted by the bailiff and told that he could not leave the groups of jurors who were waiting on the stairs for the other bailiff to return.

In Wilcox v. State, 69 Okla. Cr. 1, 99 P. 2d 531, 532, it is stated:

24

"Where the proof shows that the jury is permitted to separate after the case has been finally submitted, the defendant is entitled to the presumption that such separation has been prejudicial to him, and the burden is on the prosecution to show that no injury could have resulted therefrom to the defendant."

However, it has been held that permitting a juror to answer a proper telephone call from his family is not such a separation as is contemplated by the statute, 22 O. S. 1941 § 857 (Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331), nor the permitting of a juror to be taken to a toilet on the floor below the jury room (Welborn v. State, 70 Okla. Cr. 97, 105 P. 2d 187), nor where the jurors sleep in two different rooms where there is a bailiff in each room (Tillery v. State, 23 Okla. Cr. 226, 214 P. 198).

Under the facts herein, there was no separation of the jury as contemplated by the statute. Furthermore, the proof in connection with this question conclusively shows that there was no prejudice resulting to the defendant by reason of this alleged separation.

It is our conclusion, upon consideration of the entire record, that the defendant has had a fair and impartial trial and that the judgment of the district court of Stephens county should be affirmed. It is so ordered.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.