Joseph Arnold REVARD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12642.

Criminal Court of Appeals of Oklahoma.

Nov. 19, 1958.

Rehearing Denied Dec. 10, 1958.

Granville Scanland, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The defendant-appellant was tried before a jury in the district court of Oklahoma County and convicted of the crime of murder, and punishment was fixed by the jury at life imprisonment in the State penitentiary. Defendant's defense was insanity at the time of the offense. The victim was his wife. The information charged that death was accomplished by use of hands and feet, by stomping and beating,

resulting in the infliction of mortal wounds. The jury by reason of the verdict rejected defendant's contention that he was insane at the time of the commission of the acts charged. Following the verdict, counsel filed a motion in arrest of judgment, alleging the then insanity of the defendant, whereupon the court on November 29, 1957 ordered defendant to the Eastern State Hospital, Vinita, Oklahoma, for observation not exceeding ninety days. Thereafter, on December 16, 1957 the court issued an order for the return of defendant from the hospital, based on a report of the medical staff that defendant was found to be without mental disorder. Following this, and on February 17, 1958 a jury was empanelled to try the sanity or insanity of the defendant, and the verdict of the jury was that he was sane. Thereupon defendant's motion for new trial was heard and overruled and the court entered judgment in accordance with the verdict of the jury.

For reversal the specifications of error set out in petition in error are reduced to five propositions in brief, and will be treated in the order presented.

. The sufficiency of the evidence is not challenged, and although we have summarized nearly five hundred pages of evidence which while not a part of this opinion, is being filed in the case, we call attention here to pertinent points throwing light on the propositions raised.

Mary Revard died from a fracture of the skull and broken ribs or as stated by the physician performing the autopsy, death was due "to multiple traumatic injuries which involved particularly the head, chest and abdomen." One witness saw defendant kicking and beating his wife in the hallway outside their apartment, and others heard the noise; officers found defendant in the room with his wife's nude body on the floor; officers thought defendant drunk; there was evidence that the wife had been intoxicated and that she and defendant had been on a drinking spree for days, but defendant claimed that on the day of the homicide he had but two drinks.

Defendant testified to five 'marriages commencing when he was but 17 years of age, two of the marriages being common law. By his own testimony he had difficulty with all of his wives, and drank heavily with them of alcoholic beverages. He would always "black out" when it was shown that a wife had been injured or when he beat two men each past 70 years, and a woman 79, and he would not remember. He beat a sister upon whom he depended for financial aid because she wanted him to get to school on time.

The State on rebuttal showed that defendant had never attacked his victims when there were those present who might have prevented it.

Expert witnesses for defendant thought that he was unable to determine right from wrong, or know the probable consequences of his acts. And there was evidence that if defendant did know right from wrong, that it was impossible for him to resist the impulse to do what he did.

An expert for the State thought from a hypothetical question, which was a history of defendant's conduct, that he knew right from wrong, and the consequences of his acts. He was not permitted on rebuttal over objections of defense counsel, to go into the matter of "irresistible impulse."

Many non-expert witnesses testified. No objections were interposed to the instructions given by the court, and no additional instructions were requested. The jury found the issues against the defendant.

 It is first asserted that the court erred in its instruction No. 11 with reference to insanity. The instruction reads:

"You are instructed that an insane persons is not responsible criminally for his acts committed when such mental condition existed. The test

of criminal responsibility for acts, which would ordinarily be criminal under the law, is:

"The mental ability or capacity to distinguish between right and wrong as applied to the particular act, *and* to understand the nature and probable consequences of such act; that is to say, the capacity to know right from wrong, *and* to know then that the particular act, alleged to have been committed, was wrong." (Emphasis supplied.)

■ We note from the record that no exceptions were made to instruction No. 11, nor did defense counsel offer any different instructions. The general rule is that instructions given by the court and not excepted to at the trial or before the trial court will not be reviewed on appeal, unless fundamental error is apparent. Counsel claims fundamental error.

It is argued that the error comes about by the court using the conjunctive word "and", instead of the correlative "or".

It is urged that the test in Oklahoma where the defense of insanity is interposed is commonly known as the "right and wrong" test, which had its beginning in the celebrated M'Naghten case, House of Lords, 1843. 10 Clark and Fin. 200.

In the M'Naghten case the judges pointed out that "the jurors ought to be told in all cases that to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of mind, as not to know the nature and quality of the act he was doing; *or,* if he did know it that he did not know he was doing what was wrong." (Emphasis supplied.) See annotation in 70 A.L.R. at page 659, and 45 A.L.R.2d at page 451.

It is said that this court has never actually followed the M'Naghten rule by reason of the use of the word "and" instead of "or" and hence has been in error.

The effect of defendant's argument is to point out that the M'Naghten rule above quoted actually has two branches, and that under such rule the accused is to be held not criminally responsible where he does not know the nature and quality of his act as well as where he does not know right from wrong with respect to the act.

It is further stated that our Legislature has failed to say what insanity is, and has failed to lay down any test of insanity as a defense to criminal charges. Here, however, we would point out that we do have statutory provisions that have guided the territorial Supreme Court and the Criminal Court of Appeals in many cases over a period of over fifty years in evolving the test in Oklahoma in determining responsibility for the commission of a crime, and it is: to determine whether the accused knew right from wrong in respect to the act in question, and understood the nature and consequences of such act.

See 22 O.S.A. § 1161, reading:

"An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment, or punished for a public offense, while he or she, as the case may be, is insane. * * *"

And in this connection see the fourth sub-division of 21 O.S.A. § 152, defining those persons capable of committing crimes, except the following:

"4. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, *upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.*" (Emphasis supplied.)

In the following cases the question raised has been treated at some length, and we find it unnecessary to here repeat: Maas v. Territory, 1901, 10 Okl. 714, 63 P. 960, 53 L.R.A. 814; Turner v. Territory, 1905, 15 Okl. 557, 82 P. 650; Al-

berty v. State, 10 Okl.Cr. 616, 140 P. 1025, 52 L.R.A.,N.S., 248; Smith v. State, 12 Okl.Cr. 307, 155 P. 699; Owen v. State, 13 Okl.Cr. 195, 163 P. 548; Roe v. State, 17 Okl.Cr. 587, 191 P. 1048; Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646; Merrick v. State, 56 Okl.Cr. 88, 34 P.2d 281; Gallagher v. State, 81 Okl.Cr. 15, 159 P.2d 562; Berryman v. State, Okl.Cr.App., 283 P.2d 558.

There are many other cases from this court that might be cited and where the instruction given as to insanity as a defense was substantially as the instruction given in the within case.

The Attorney General argues:

"The instruction as given by the Court states the rule with reference to insanity in the form and language uniformly followed by this Court in all insanity matters. The instruction sets forth two conditions which must exist in order for the defendant to be criminally responsible. In the first place, the defendant must have the mental capacity to distinguish between right and wrong, as applied to the particular act. In the second place, he must have had the capacity to understand the nature and probable consequences of the act. It naturally follows that if the defendant appears not to have had the mental capacity to distinguish between right and wrong, or if he did not have the capacity to understand the nature and consequences of his act, he is not criminally responsible."

We conclude that the instruction complained of is not abhorrent to the statutory provisions mentioned, and is in accordance with the rule early adopted by this court. We are not convinced that there is justification for changing the test complained of at this time, in view of the conflict in medical as well as legal opinion.

In his second specification of error defendant contends that the trial court should have instructed the jury upon the "irresistible impulse" theory of defense.

We do not find from the record where defendant requested the court to give such an instruction. We have from the early history of this court said that where no objection is made or exceptions taken to instructions given by the court, and no request for instructions is made, error cannot be predicated on failure of court to give any particular instruction. Johnson v. State, 52 Okl.Cr. 86, 2 P.2d 601; Gentry v. State, 86 Okl.Cr. 92, 189 P.2d 626; Estes v. State, 95 Okl.Cr. 209, 242 P.2d 459; Cherry v. State, Okl.Cr. App., 276 P.2d 280. And while it is true that the testimony of the psychiatrist and psychologist testifying for the defendant was broad enough to have justified such an instruction, if such a theory was subscribed to in this jurisdiction, counsel no doubt well knew that such theory was not recognized by this court and hence the failure to request such an instruction. We say this because the county attorney in an effort to rebut the testimony of the two expert witnesses for the defendant asked on redirect examination of Dr. Moorman Prosser, psychiatrist, testifying for the State:

"Q. (By Mr. Theus [assistant county attorney]): Doctor, I believe Mr. Scanland was making some reference to the theory about which Dr. Kimerer testified, the theory of what has been identified here as irresistible impulse.

"Mr. Scanland: There is no irresistible impulse of any kind in this case. It is not the law in Oklahoma.

"The Court: That will be sustained and the jury is instructed to disregard the question."

In Roe v. State, 17 Okl.Cr. 587, 599, 191 P. 1048, 1052, Matson, J., for this court said:

"An entire volume might be written on the law of insanity. Some

states recognize and apply the doctrine of 'irresistible impulse,' otherwise sometimes called the 'new rule.' Other states follow strictly the English or old rule. The authorities on this subject, therefore, are in irreconcilable conflict. *If the irresistible impulse doctrine is to apply in this state, then the Legislature must amend the statute.* Until that time persons charged with crime, who interpose the defense of insanity, must be held criminally responsible for their acts if at the time of their commission they were capable of knowing the wrongfulness of their acts and to understand the nature and consequences of them. A person possessing such a degree of mentality cannot be held exempt from criminal responsibility in this state merely because of some alleged irresistible impulse on his part to do the act.

"The statute of this state does not recognize the doctrine that one may be so possessed with an uncontrollable impulse as to compel him to do what he knows to be wrong and a crime, and yet be relieved from all criminal responsibility. A condition might be conceived of an uncontrollable insane impulse sufficient to relieve one of criminal responsibility under our statutes; but this would only arise when the diseased condition of the accused's mind was such as to destroy the power of the accused to comprehend the nature and consequences of the particular act, and to know that it was wrong at the time of its commission."

Counsel's objection, as we see from the above case, was good, even though his expert witnesses had in answer to hypothetical questions given support to the validity of the claim that a person while knowing right from wrong might be possessed of an irresistible impulse due to disease of the mind, to do a certain act. But he objected to the expert witness for the State going into the subject, thus precluding this court from reviewing the question even if it was inclined so to do.

We therefore conclude that the trial court did not err in failing to give the instruction complained of, and the question, under the facts stated, is not entitled to review on the merits.

It is next urged that the court erred in admitting in evidence a dress worn by the deceased. An objection was made but nothing was shown to support such objection. On the other hand, the State had shown by Hope Pena that the dress in question was being worn by the victim in the hallway of the rooming house just prior to the time she entered her apartment with the defendant, and it was clean and with no stains, whereas the opposite was true when the nude body of Mary Revard was found on the floor of her one-room apartment, where defendant was seen with his left foot on her body and the dress on the floor. And we have held that ordinarily the admission of such evidence is within the sound discretion of the trial court. Gloves or other clothing worn by a deceased at the time of the homicide were held admissible in Morris v. State, 6 Okl.Cr. 29, 115 P. 1030, and Saunders v. State, 4 Okl.Cr. 264, 265, 111 P. 965. See also January v. State, 16 Okl.Cr. 166, 181 P. 514; Seals v. State, 92 Okl.Cr. 272, 222 P.2d 1037.

It is next said that the conviction should be reversed because of the fact that a witness for the State, Hope Pena, testified at the trial with reference to the defendant having kicked and beaten the deceased, whereas the witness did not testify to such effect at the preliminary hearing. The witness was asked about such matter at the time of her testimony at the trial, and admitted that she had not mentioned such kicking in her testimony

at the preliminary hearing. She was a 15 year old girl, Mexican-American. She had said on cross-examination in answer to the question why she had not told about the kicking while testifying at the preliminary: "I don't know; it seemed awful to me the way he did it."

If counsel had desired to impeach the witness by the testimony at the preliminary, he should have offered the transcript of such testimony at the trial, but due to the frank admission of the witness counsel apparently decided not to do so. However, the jury had for consideration the entire testimony of Hope Pena at trial and no doubt weighed it in connection with the admission developed by the cross-examination by counsel for the defendant.

We find no error in the ruling of the trial court.

■ It is finally urged that the court should not have admitted certain photographs of the body of the deceased, but has failed to advance any meritorious reason in support of such proposition. It is true that the photographs showed the nude body of the deceased, but this was necessary to show the bruises from the toes to the skull. The autopsy developed that there was a fractured skull, many broken ribs, and the body showed evidence of other serious injuries, and while the pathologist testified that the skull fracture possibly could by itself have caused death, it was his opinion that "death was due to multiple traumatic injuries which involved particularly the head, chest, abdomen". Such photographs have been held admissible since the early history of this court. See Morris v. State, 6 Okl.Cr. 29, 115 P. 1030; Langley v. State, 90 Okl.Cr. 310, 213 P.2d 886; Porter v. State, 76 Okl.Cr. 16, 133 P.2d 903; Mott v. State, 94 Okl. Cr. 145, 232 P.2d 166.

By reason of what has been said, the judgment complained of must be, and is affirmed.

BRETT, P. J., and NIX, J., concur.