James D. FRENCH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13748.

Court of Criminal Appeals of Oklahoma.

June 8, 1966.

Rehearing Denied July 27, 1966.

James B. Martin, McAlester, for plaintiff in error.

Charles R. Nesbitt, Atty. Gen. of Oklahoma, Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

James D. French, hereinafter referred to as defendant, was convicted in the District Court of Pittsburg County, for the crime of Murder and from the judgment and sentence fixing his punishment at death, a timely appeal has been perfected to this Court. Since the undisputed evidence establishes that James D. French, while serving a sentence of life imprisonment for the crime of murder, strangled his cellmate, Eddie Lee Shelton, to death, on the morning of October 17, 1961, we will recite only that portion of the record relevant to the five assignments of error urged by the defendant on appeal.

 The defendant first contends that his constitutional rights were violated when he was forced to trial clothed in prison garb and surrounded by armed guards. He argues that:

"The Constitution of the State of Oklahoma (Art. 21 [art. 2], Sec. 21) and Amendment 5 to the Constitution of the United States, in substance, prohibit any person being compelled in any criminal case to be a witness against himself. Here, the very presence of this defendant, clothed in the tell-tale prison garb, and surrounded by armed guards, being tried for his life, can only be construed as forcing this defendant to 'give testimony' as to his alleged vile and dangerous character, and violated the spirit of the constitutional provisions above stated.

See WARD v. STATE, 27 Okl.Cr., 362; 228 P. 498; FRENCH v. State, Okl.Cr., 377 P.2d 501;

22 OSA, Title 22, Sec. 15 provides that 'No person can be compelled in a criminal action to be a witness against himself * * *'.

The holding of this defendant in court, before the actual trial of jurors for two days, in easily recognized prison garb and surrounded by armed guards, can only be considered equal to the forcing of this 'testimony'."

We are of the opinion that this assignment of error is without merit and that the Ward and French cases relied upon by the defendant are clearly distinguishable from the facts in the instant case. In the Ward case the defendant was charged with manufacturing intoxicating liquor and, over objection and in the presence of the jury, he was required to put on a coat that was found near the whiskey still in question. The County Attorney in that case was permitted to remark to the jury "The coat found at the still fits the defendant like the paper on the wall." This Court held this to be clearly violative of the defendant's constitutional right not to give incriminating evidence against himself. In the French case this Court reversed the conviction and sentence on the ground that a portion of the jury saw the defendant brought into the courtroom with his hands cuffed and his arms bound by a leather belt, and this violated that portion of 22 O.S.1961, § 15 which provides that "in no event shall he be tried before a jury while in chains or shackles." Defendant does not allege the presence of chains or shackles, but simply urges this Court that the fact that he was dressed in prison clothing and accompanied by guards constituted the act of forcing the defendant to give testimony of his dangerous character.

In the instant case it does not appear that the defendant or his counsel ever requested that he be permitted to appear in civilian clothes during his trial. Moreover, since the homicide occurred in the State Penitentiary where both the defendant and the deceased were serving sentences, it would have been impossible to present all the competent facts surrounding said homicide to the jury for their consideration, without revealing that the defendant was a convict. The fact that the defendant took the witness stand in his own behalf, freely admitted the bizarre details of the slaying as part of his testimony in chief, and described in minute detail the facts and circumstances surrounding the slaying of Eddie Lee Shelton, further renders untenable this assignment of error.

The defendant's second contention is that the trial court erred in refusing to allow Dr. L. J. West, a physician and Professor of Psychiatry at the University of Oklahoma Medical School, to appear and testify as to his findings relating to the defendant's sanity at the time the homicide occurred, as Amicus Curiae. From the record it appears that Dr. West had followed the case closely and had a scientific interest in it and that when he was contacted by Mr. James Martin, counsel for the defendant, he agreed to examine the defendant without charge if he could present his findings as a Friend of the Court rather than as a partisan witness. Defendant urges that when the trial court refused to allow Dr. West to testify as Amicus Curiae, and it became necessary to offer his expert testimony as that of a defense witness, such ruling caused the jury to give Dr. West's testimony less weight and credibility than that to which it was entitled. We here observe that Dr. West was not the only qualified psychiatrist who testified at the trial. Indeed, there were several witnesses who had examined and observed the defendant and whose findings were not in agreement with those of Dr. West. In Dare v. State, Okl. Cr., 378 P.2d 339, we stated:

"The testimony of experts is not conclusive on the issue of mental capacity since the law makes no distinction in weighing evidence between expert testimony and evidence of other character."

We are of the opinion that the trial court did not err in refusing to allow Dr. West to testify as Amicus Curiae when he had been unilaterally selected by counsel for the defense, but that to have allowed him to testify as Amicus Curiae would have given his testimony more weight and credibility than it was entitled to receive.

Defendant's next assignment of error arises out of the following proceedings appearing at pages 142–146 of the casemade:

"The following proceedings were held at 8:40 A.M. on June 8, 1965, in the Chambers of Judge Robert J. Bell, out of the presence of the jury. The Clerk and other officials of the court present:

Mr. Martin: Comes now the defendant by and through his court appointed counsel and moves this court to grant a mistrial for the following reasons:

(1) On June 7th at the hour of 10 o'clock P.M. there was aired over Channel 8 TV, which channel is widely received in Pittsburg County, and this defendant has reason to believe might have been seen by one or more members of this jury. Certain pictures of the defendant James D. French showing the said James D. French in the courthouse of Pittsburg County, identified by name, and as defendant in the case of State of Oklahoma vs. James D. French, he at the time being manacled, chained and handcuffed, and at one time in the sequence of the many feet of film, a closeup of his wrists and arms was exhibited showing the chains around his waist which chains were attached to handcuffs completely manacling the said James D. French.

(2) For the further reasons and grounds that at the same time over Channel 9 TV Station, which is aired in Pittsburg County as Channel 3 on the Cable TV system the same pictures showing the defendant similarly manacled as I am duly informed, all of which constitutes a violation of the Canon of Legal Ethics concerning photography in and around a courtroom, and for the further reason the showing of this defendant so manacled can very probably antagonize any of the jurors who could have seen or heard about said pictures and would influence the thinking of the jury and prevent the defendant from receiving a fair trial.

Court: Have you anything to say, Mr. Carman?

Mr. Carman: Comes now J. Edwin Carman, County Attorney of Pittsburg County and states that at all times during the sequence of events alleged in counsel's motion for mis-trial, the defendant was being conducted chained and

manacled and handled etc in conformity with the rules of procedure in this type of chase as set down in a reversal of a previous trial by Honorable Kirksey Nix and other members of the Court of Criminal Appeals at that time

The state further alleges that the Honorable Robert J. Bell had specifically directed that prison officials proceed in conformity with the rules heretofore set down by said court and had also admonished that there be no pictures taken inside the courtroom and to my knowledge none of the sequence of pictures alleged in the motion were so taken inside the courtroom of the Honorable Robert J. Bell.

Court: Well the record shows all of that. This case has been on TV since 1961 and this is the third trial. There have been no pictures taken in the courtroom and the photographers were admonished not to take any. I saw Channel 8. I don't say there wasn't a chain around his waist, but it didn't impress me. Leaving the courthouse French was in custody of plain clothesmen. No weapons showed. Recently on Channel 8 pictures were shown of French in the prison cell. I can't say whether on high or death row. On yesterday in the presence of his counsel and in the presence of James D. French a photographer asked if pictures could be taken of the defendant out of the courtroom and as he left the courtroom. I admonished them they could not take the pictures against the will of the defendant. In each instance the jury has been sent out and kept in the jury room until after French did leave for the prison. French gave his assent to taking of the pictures. If any were taken about the courthouse it was with his express consent. Do you remember that Mr. Martin?

Mr. Martin: I remember the judge telling him any taken would be taken with his consent.

Court: It was just as he entered the witness room door. For that reason, among other things, the motion for mistrial is denied. There is no showing of any prejudice. I don't think there was any. The jury right now is in the jury room. It was permitted to separate by consent of counsel. We all know that prisoners of the type of this defendant are all of necessity brought to the courthouse with handcuffs on. They couldn't be safely handled any other way. This is a penitentiary town. I don't know whether people watch that station or not. Channel 9 does not come in unless a person is on the Cable and they have to change to channel 3. So that will be all."

Defendant contends that the trial court's ruling in refusing to grant a mis-trial constitutes reversible error. He argues that the jurors probably saw the film and assuming that they saw the defendant filmed in chains amounted to a violation of 22 O.S. § 15, the same providing:

"No person can be compelled in a criminal action to be witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and in no event shall he be tried before a jury while in chains or shackles."

■ We are of the opinion that this assignment of error is without merit. Title 22, O.S. § 853 provides:

"The jurors sworn to try an indictment or information, may, at any time before the submission of the cause to the jury, in the discretion of the court, be permitted·to separate, or to be kept in charge of proper officers. The officers must be sworn to keep the jurors together until the next meeting of the court, to suffer no person ·to speak to or communicate with them, nor to do so themselves, on any subject connected with the trial, and to return them into court at the next meeting thereof. Such officer or officers having once been duly sworn, it is not necessary that they be resworn at each recess or adjournment. An admonition

to the officer and the jury shall be sufficient."

The alleged prejudicial error purportedly occurred during a recess before final submission of the case to the jury and counsel for defense had acquiesced and agreed to allow the jury to separate. The rule is well settled that the separation of the jury for a short period of time or overnight where not objected to by counsel, or sworn by affidavits or testimony on motion for new trial that defendant was prejudiced, will not vitiate a verdict. Bilton v. Territory, 1 Okl.Cr. 566, 99 P. 163; Nowabbi v. State, 31 Okl.Cr. 158, 237 P. 868; Cox v. State, Okl.Cr., 283 P.2d 545; Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643; Martin v. State, 92 Okl.Cr. 182, 222 P.2d 534; Hobson v. State, Okl.Cr., 277 P.2d 695; Hayes v. State, Okl.Cr., 292 P.2d 442.

■ There was no showing made at the time the Motion for Mis-trial was argued in chambers, nor on the Motion for New Trial, that any of the jurors had observed the film during the recess and were prejudiced thereby. It is abundantly clear that Judge Robert J. Bell scrupulously followed the rules laid down in French v. State, supra, and did not permit the filming of the defendant in the courtroom nor did he permit the defendant to be tried while in chains. The record affirmatively establishes that the filming which occurred outside the courtroom, was with the express consent of the defendant. We must therefore hold, under the authorities above set forth, that this assignment of error is without merit.

■ Since the defendant's fourth assignment of error is not supported by the record, we deem it unnecessary to consider it in this opinion.

■■ This leads us to a consideration of the fifth and final assignment of error which in substance challenges the trial court's instruction relating to defendant's criminal responsibility based on the M'Naghten Rules and the provisions of Title 21 O.S.1961, § 152, and urges the adoption by this Court of the test approved in Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499, and 165 U.S. 373, 375, 17 S.Ct. 360, 362, 41 L.Ed. 750, the same being:

"The term 'insanity,' as used in this defense, means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing, or where, though conscious of it, and able to distinguish between right and wrong, and know that the act is wrong, yet his will—by which I mean the governing power of his mind—has been otherwise than voluntarily so completely destroyed that his actions are not subject to it, but are beyond his control."

The trial court, in the instant case, instructed the jury in the following language:

"No. 6. You are instructed that in addition to his plea of not guilty there is the further defense in this case that the defendant was at the time of the commission of the alleged offense insane, and in this connection you are instructed that an insane person cannot be held liable for the commission of a crime, that is that a person who is unable to distinguish right from wrong and to know the probable consequences of his acts is an insane person; but you are instructed that the defendant is presumed to be sane which presumption will prevail until evidence is introduced by the State or by the Defendant to raise a reasonable doubt of the sanity of the defendant, at which time the presumption of sanity ceases and the burden of establishing the sanity of the defendant is cast upon the State, and that the State must prove the sanity of the defendant in the manner and to the extent that any other material matter must be proven; and if upon a consideration of all the evidence, facts and circumstances which have come to your attention during the trial you have a reasonable doubt as to the sanity of the de-

fendant at the time of the alleged offense, you are instructed that you must give the defendant the benefit of that doubt and so state in your Verdict, a proper form of same will be furnished you, in other words as heretofore instructed, you must find and believe from the evidence beyond a reasonable doubt that at the time of the commission of the alleged offense that the defendant was sane to the extent he was able to distinguish between right and wrong and to know and understand the nature of the act he was committing and the probable consequences thereof, in order for you to find the defendant sane."

Instructions No. 7 and 8 were in accord with and further clarified this instruction.

Title 21 O.S. 1961 § 152 provides:

"All persons are capable of committing crimes, except those belonging to the following classes:

1. Children under the age of seven years.

2. Children over the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness.

3. Idiots.

4. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, *upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.* (emphasis ours)

5. Persons who committed the act, or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation.

6. Persons who committed the act charged without being conscious thereof.

7. Persons who committed the act, or made the omission charged, while under involuntary subjection to the power of superiors."

Title 21 O.S.1961, § 154 provides:

"A morbid propensity to commit prohibited acts existing in the mind of a person who is not shown to have been incapable of knowing the wrongfulness of such acts, forms no defense to a prosecution therefor."

The instructions given by the court amply covered the issue of criminal responsibility and were couched in similar language to those approved by this Court in Dare v. State, supra; Revard v. State, Okl.Cr., 332 P.2d 967, and cases cited therein. In accordance with the prior decisions of this Court, we are of the opinion that this assignment of error is without merit and reiterate our position stated in Dare v. State, supra, that

"We * * * are unwilling, at this time, to abandon the rule so well-established in this jurisdiction, having found nothing better that would justify a change.

The M'Naghten Rules, as a test for criminal responsibility, will remain the law in this jurisdiction until the Court of Criminal Appeals can conscientiously adopt rules, taking into consideration advances both legal and medical and the statutes of Oklahoma relating to criminal responsibility, which will better serve the orderly administration of criminal justice."

Our examination of the record leads us to the conclusion that the defendant was fairly tried before a jury of his peers, ably represented by competent counsel and that the trial judge meticulously protected his constitutional rights. The verdict of the jury is supported by the overwhelming proof of the defendant's guilt of the deliberate and premeditated murder of Eddie Lee Shelton, and there being no error of law sufficient to justify this Court in interfering with the verdict of the jury, the judgment and sentence appealed from is affirmed.

The date originally appointed for the execution of the defendant James D. French having passed pending this appeal, it is ordered, adjudged and decreed by this Court that the judgment and sentence of the District Court of Pittsburg County, be carried out by the electrocution of the defendant James D. French by the Warden of the State Penitentiary at McAlester, Oklahoma, on Wednesday, August 10, 1966.

NIX, and BRETT, JJ., concur.

## ON RE-HEARING

BUSSEY, Presiding Judge.

On the 8th day of June, 1966, this Court delivered an opinion affirming the conviction of James D. French and fixing the date of execution. Thereafter, on the 17th day of June, 1966, Mr. James Martin, attorney for plaintiff in error, filed a Petition for Re-Hearing asserting the same errors complained of in his original petition in error, and brief in support thereof. This Court carefully considered the assignments of error contended in the petition filed for the plaintiff in error, the brief, and the oral argument in support thereof before rendering this decision on said June 8, 1966.

We have carefully re-considered the assignments of error and authorities cited, and are of the opinion that the *Petition for Re-Hearing should be denied.*

We here take note that the plaintiff in error, James D. French, has corresponded with the trial court and with the Clerk of this Court requesting that the Court-Appointed Attorney be relieved of further obligation, duty, or authority to represent the said James D. French in any further proceedings as attorney.

After having reviewed the trial record, briefs, and oral argument, we are of the opinion that Mr. James Martin ably represented the plaintiff in error in the trial court, and was diligent in perfecting the appeal therefrom; and discharged his duty with fidelity toward the defendant in his

several appearances before this Court. Having thus discharged his obligation toward the said James D. French, and fulfilling his obligations under the Rules of Professional Ethics, and the Constitutions of the State of Oklahoma and the United States; Mr. James Martin is hereby relieved of any further obligation, duty or authority to represent the said James D. French.

The trial court is directed to enter an order as requested by plaintiff in error, relieving Mr. James Martin of any further obligation, duty, or authority to represent the said James D. French in any further proceedings arising out of his conviction in the District Court of Pittsburg County, Oklahoma. It is so ordered.

Petition for Re-Hearing denied. The Clerk of this Court is directed to issue the mandate forthwith.