**Ernest Henry KING, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16580.**

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1971.

Andrew T. Dalton, Jr., Appellate Public Defender, Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Ernest Henry King, hereinafter referred to as the defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offense of Lewd Molestation, After Former Conviction of a Felony. His punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Reginald Hampton, age 11, testified that on September 17, 1970, he was selling newspapers in his neighborhood, when he approached the defendant, asking him if he wished to buy a newspaper. He and other newsboys later observed the defendant and attempted to run away from him, as the other boys knew the defendant's reputation. Defendant took chase, and caught Reginald. He grabbed Reginald about the arm and led him up a hill, wherein he removed Reginald's pants and inserted his private parts in Reginald's posterior, accomplishing penetration. Reginald testified that he hollered for help, and that a lady down the hill heard him. He broke from the defendant and ran down the hill. He told several persons what had happened.

Thelma Williams testified that her home was nearby the area where the incident occurred and that she was home on the day in question. She testified that Reginald came to her in the laundry, crying, with his clothes muddy, and stating that a man had carried him up the hill and had done something bad to him. She called the police, and before they arrived, located the defendant concerning what had happened, and defendant denied doing anything to Reginald. She continued to talk to the defendant, and the defendant admitted walking the little boy up the hill.

The defendant testified that he had seen Reginald earlier that day, but denied taking the boy up on the hill. He testified that he had other convictions for lewd molestation, and that he had been in mental hospitals in Oklahoma, Colorado, and

Texas. He denied admitting to the witness, Mrs. Williams, that he had taken the boy to the hill.

Thelma Williams was recalled and testified about the general nature of the surroundings of the area wherein the alleged offense took place.

R. R. Linker testified that he was an attorney and performed a service as an attorney for a mental health commission in September, 1970, for the defendant. He testified that it was his opinion, based on his observations of the defendant at the hearing, that the defendant was mentally disturbed. He indicated there was a possibility that the defendant did not know right from wrong. He testified that the hearing was a civil-mental health hearing, and that there was a distinct difference in proof between the criminal standard and the civil standard.

Deputy R. T. Kramer testified that he had signed a petition to have the defendant committed. He indicated that at the time he signed his petition, he felt that the defendant needed mental therapy.

Dr. C. S. Summers testified that he had served on the local sanity board for about forty-five years, and had training in psychiatry. He testified that he examined the defendant in September of 1970, and formed an opinion based upon that examination, that the defendant was mentally incompetent, and in need of attention in a mental hospital.

On cross-examination, Dr. Summers testified that the tests run were mental tests only, and that his opinion was based upon observations and a history of the defendant while he was in custody.

The State called Dr. B. F. Peterson, Superintendent, Eastern State Hospital in Vinita, Oklahoma in rebuttal. He testified that he had evaluated the defendant personally and under his own supervision on two prior occasions, once in 1969, and once prior to trial. He testified that the defendant suffered from a personality disorder, anti-social personality, and sexual deviation, but that in his opinion, the defendant did know right from wrong.

■ The first proposition asserts that the court erred in failing to sustain the Demurrer of the defendant to the evidence for the reason that the State failed to prove that the occurrence happened in a remote and secluded place, as charged in the Information. Defendant correctly argued that no one specifically testified that the alleged molestation occurred in a "secluded, remote and secret place." We are of the opinion, however, that there was sufficient evidence for the jury to conclude that the offense occurred in a remote and secluded place. Excerpts of the testimony of the prosecuting witness, Hampton, revealed the following:

"Q. Okay, I mean you and Mr. King went up the hill, did you stop near some houses?

"A. No, this was on top of the hill, there wasn't nothing but this tall building. (Tr. 86)

" * * *

"Q. Let me ask you this, were you near a parking lot?

"A. Yes, sir.

"Q. Okay, were there cars on the parking lot?

"A. No, sir.

"Q. All right, was the parking lot for the church?

"A. Yes, sir.

"Q. Was anybody at the church?

"A. No, sir, nothing but some kids playing around the church.

"Q. Okay, and could you hear them laughing and talking?

"A. No, sir.

"Q. Were they too far away?

"A. Yes, sir. (Tr. 87, 88)

" * * *

"Q. Now I want you to remember, try your best and see if you can remember whether or not he had his hands around you when he told you to go over to the *weeds*. (Tr. 90)

"  *  *  *

"Q. All right, but this was after he had told you you could go to *the woods*, or the bathroom?

"A. Yes, sir.  (Tr. 91)

"  *  *  *

"Q. Did you walk away from Mr. King when you used the bathroom?

"A. Yes.

"Q. How many steps did you take?

"A. One.

"Q. You just took one step, is that right?

"A. Yes, you see I was already in the bushes."  (Tr. 91, 92)

We, therefore, find this proposition to be without merit.

The final proposition asserts that the trial court erred in failing to submit to the jury the test for insanity, based upon whether or not the defendant was incapable of preventing himself from committing the particular act. Defendant concedes that the trial court properly instructed the jury concerning insanity, applying the M'Naghten Rule, but argues that it is now the time for this Court to broaden the test and to apply the doctrine of irresistible impulse. French v. State, Okl.Cr., 416 P.2d 171, in dealing with the specific question, we stated in the Sixth Syllabus of the Court:

"Held: The M'Naghten Rules, as a test for criminal responsibility, will remain the law in this jurisdiction until The Court of Criminal Appeals can conscientiously adopt rules, taking into consideration advances both legal and medical and the statutes of Oklahoma relating to criminal responsibility, which will better serve the orderly administration of justice."

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BRETT and NIX, JJ., concur.